A00A2169, A00A2170. DRISKELL et al. v. EMPIRE FIRE & MARINE INSURANCE COMPANY; and vice versa.
(547 SE2d 360)

PHIPPS, Judge.

This lawsuit arises from a collision involving a vehicle owned by Metro Courier, Inc., a motor carrier. For injuries sustained in the collision, Edmund and Christine Harris obtained a $3,150,000 judgment against Metro. In their individual capacities and as assignees of Metro, the Harrises brought this suit to collect part or all of the judgment from Empire Fire & Marine Insurance Company, Metro's liability insurer. Edmund Harris died during the pendency of this litigation, and Toni Driskell, the administratrix of his estate, was substituted as a party plaintiff.

Is Empire chargeable with breach of duty by reason of its refusal to defend Metro in the underlying action or with bad faith in failing

to settle the action? If so, what are the damages? Is Empire's liability in this action limited to the $1,000,000 in coverage provided by Metro's insurance policy or to the $200,000 in coverage required by Georgia law, or may Empire be held liable for the entire $3,150,000 judgment? Did the enactment of federal legislation preempt the state law mandating minimum insurance coverage? These are the primary issues raised.

Metro is engaged exclusively in the intrastate transportation of property for hire. To obtain a certificate of convenience and public necessity from the Georgia Public Service Commission (PSC), Metro secured automobile liability insurance from Empire in December 1994.

In October 1995, a vehicle operated by Christine Harris and occupied by Edmund Harris was involved in a collision with a vehicle owned by Metro and operated by its employee, Marcus Saucer. To recover for injuries sustained, the Harrises sued Metro and Saucer. In their complaint, the Harrises alleged that at the time of the collision, Saucer was an employee of Metro operating the vehicle within the course of his employment.

After suit was brought, Metro asked Empire to provide a defense. Empire refused. Empire acknowledged to the Harrises and to Metro that the policy it had issued to Metro provided a maximum of $1,000,000 in liability coverage for vehicles listed in the policy declarations, but asserted that the policy provided no coverage for the vehicle being operated by Saucer at the time of the collision because it was not a listed vehicle. Upon investigation, Empire also determined that Mrs. Harris's negligence caused the collision. For these reasons, Empire rejected an offer by the Harrises to settle the suit for $1,000,000.

Although Empire brought a declaratory judgment action to determine whether its policy covered the collision, it did not obtain a stay of the Harrises' damage suit. Consequently, the suit proceeded to arbitration. Prior to entry of the arbitration award, the Harrises and Metro entered into an agreement under which Metro consented to entry of judgment on the arbitrator's award and assigned its rights against Empire to the Harrises in exchange for the Harrises' agreement not to enforce the judgment against Metro. The agreement stated that Metro was consenting to the judgment because of Empire's refusal to provide a defense to the suit and because of the financial risks and difficulties Metro faced as a result of the litigation. The arbitrator later returned an award in favor of Edmund Harris in the amount of $2,800,000 and in favor of Christine Harris in the amount of $350,000. A $3,150,000 final judgment was entered in the Harrises' favor, and Empire's declaratory judgment action was

dismissed without prejudice.[1]

Although Empire correctly represented that its policy does not provide $1,000,000 in coverage for the Metro vehicle driven by Saucer, Empire inaccurately asserted that its policy provided no coverage. Coverage existed under a policy endorsement issued by Empire to Metro shortly after the original policy was issued. The endorsement (known under PSC regulation as a "Form F" endorsement) had the effect of providing liability insurance for vehicles not described in the policy to the extent of the minimum amount mandated by Georgia law, i.e., $100,000 per person and $300,000 per incident. As a result, the combined insurance coverage available to Mr. and Mrs. Harris would be $200,000.

The Harrises seek to compel Empire to pay the entire $3,150,000 judgment, as well as attorney fees, based on (1) Empire's failure to provide a defense in the suit against Metro, and (2) Empire's bad faith refusal to settle the case within the policy limits. In their complaint, the Harrises also asserted a claim for punitive damages based on false representations made by Empire concerning Metro's insurance policy. The Harrises also maintain that Empire is liable for the $1,000,000 policy limit because it either waived the $100,000/$300,000 limitation of liability or is estopped to deny that its policy provides liability coverage in an amount less than $1,000,000.

Empire denies any liability. Among other things, it argues that Congressional enactment of the Federal Aviation Administration Authorization Act ("FAAAA") invalidated Georgia's statutory and regulatory motor carrier insurance scheme, thereby extinguishing coverage under Metro's Form F endorsement.

The trial court determined that, although as a matter of law Empire is liable to the Harrises for the amount of coverage provided by the Form F endorsement, neither the doctrine of waiver nor estoppel can be used to expand Empire's liability beyond the legally mandated limits. However, the court ruled that the Harrises, as assignees of Metro, may pursue a claim against Empire for damages based on Empire's bad faith refusal to exercise its duty to settle their claims within the minimum $100,000/$300,000 limit. Nonetheless, the court ruled that Empire did not have a contractual duty to defend Metro. The court rejected Empire's arguments as to the preemptive effect of the FAAAA.

The court thus granted summary judgment to Empire with respect to the issues of waiver, estoppel, and its duty to defend Metro in the underlying suit. In Case No. A00A2169, the Harrises appeal.

---

[1] *Empire Fire &c. Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670 (507 SE2d 525) (1998).

The court ruled that Empire was not entitled to summary judgment on grounds that the FAAAA nullified the Form F coverage, nor on the plaintiffs' claim against it for failure to settle the underlying suit. The court also entered orders adverse to Empire on various discovery matters. In Case No. A00A2170, Empire appeals.

1. The Harrises first argue that jury questions exist on the waiver and estoppel issues. We disagree.

In analyzing this argument, we must first review the state statutory and regulatory structure which Empire claims the FAAAA preempted. OCGA § 46-7-3 generally prohibits any motor common carrier from operating without first obtaining a certificate of public convenience and necessity from the PSC. To obtain a certificate, OCGA § 46-7-12 requires the holder to secure a bond or policy of indemnity insurance to protect the public against injuries caused by the negligence of a motor carrier, its agents, and employees.

Because of the strong public policy reflected in OCGA § 46-7-12, the PSC promulgated Rule 1-8-1-.01.[2] This rule requires the motor carrier's insurance policy to provide minimum liability coverage in the amounts of $100,000 per person and $300,000 per incident regardless of whether motor vehicles involved in an incident "are specifically described in the policy or not." PSC Rule 1-8-1-.07 (d) requires an insurer to issue a Form F endorsement to a motor carrier policy providing the mandated coverage and to file a "Form E" certificate of insurance with the PSC verifying that such coverage has been provided.

In *Ross v. Stephens*,[3] the Supreme Court of Georgia held that an insurer's liability under a Form F endorsement is limited to that which is required by statute rather than to the policy limits which apply to vehicles described in the policy.

The Harrises' position is that Empire waived or is estopped to invoke the limitation of liability under the Form F endorsement because it has represented and admitted that the policy it issued to Metro provided $1,000,000 in coverage.

But Empire has consistently and correctly asserted, both before this suit was instituted and in its pleadings and discovery responses, that the policy's $1,000,000 coverage does not apply to the unlisted vehicle operated by Saucer. Therefore, even assuming that the doctrine of waiver or estoppel could be used to expand the dollar amount of coverage provided by a liability insurance policy,[4] there is no basis for enlarging coverage here.

---

[2] *Ross v. Stephens*, 269 Ga. 266 (496 SE2d 705) (1998).
[3] Id.
[4] Compare *Andrews v. Ga. Farm &c. Ins. Co.*, 226 Ga. App. 316 (487 SE2d 3) (1997), with *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865 (1) (303 SE2d 43) (1983).

Moreover, the doctrine of estoppel is predicated upon "a detrimental change in position in reliance upon the conduct of the party to be estopped,"[5] and the Harrises have not shown how they or Metro placed "detrimental" reliance on Empire's representations. As to the question of waiver, the policy Empire issued to Metro provides that its terms can be waived "only by endorsement issued by us and made a part of this policy." Provisions such as this have been held enforceable.[6]

2. Empire argues that the FAAAA terminated Metro's coverage under the Form F endorsement by invalidating insurance requirements imposed by OCGA § 46-7-12 and PSC Rule 1-8-1-.01. This argument is without merit.

The FAAAA, which became effective January 1, 1995, does prohibit a state from enacting or enforcing a law or regulation related to "a price, route, or service" of any motor carrier.[7] But it does not restrict a state's authority to regulate motor carriers with regard to "minimum amounts of financial responsibility relating to insurance requirements."[8]

On the date of the collision in this case, emergency interim rules enacted by the PSC as a result of the FAAAA required intrastate motor carriers of property, such as Metro, to secure a "motor carrier of property permit" in lieu of a certificate of public convenience and necessity.[9] To obtain the permit, Metro had to demonstrate compliance with state insurance laws and regulations.[10] One such regulation, Rule 1-8-1-.01, states that no "certificate or permit" shall be issued or remain in effect absent the compulsory minimum liability insurance. Consequently, the coverage provided by Metro's Form F endorsement was in effect and applied to this collision.

There is no merit in Empire's argument that the Form F endorsement does not provide coverage in this case because Saucer was not transporting property for hire at the time of the collision. Rule 1-8-1-.01 requires the carrier's insurance policy to indemnify members of the public for loss "resulting from the negligent operation, maintenance, or use" of the carrier's motor vehicles. Although Empire claims that Saucer did not have permission to drive Metro's vehicle when the collision in this case occurred (on a weekend), it is undisputed that his purpose in operating the vehicle at the time in question was to perform authorized maintenance.

---

[5] *Ga. Farm &c. Ins. Co. v. Vanhuss*, 243 Ga. App. 26, 27 (532 SE2d 135) (2000).
[6] See *Parris & Son, Inc. v. Campbell*, 128 Ga. App. 165, 171 (9) (196 SE2d 334) (1973).
[7] 49 USC § 14501 (c) (1).
[8] 49 USC § 14501 (c) (2) (A).
[9] PSC Rule 1-16-1.02 (a).
[10] See PSC Rule 1-16-1.02 (b).

3. The Harrises contend that the court erred in granting summary judgment to Empire on the question of whether it had a duty to defend their personal injury action against Metro and Saucer. We agree.

The court ruled that Empire had no duty to defend Metro because the complaint sought only to impose vicarious liability on Metro under the doctrine of respondeat superior and did not allege that Metro owned the subject vehicle.

> The true rule is that the duty to defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; even if groundless, the allegations of the complaint (against the insured) are looked to to determine whether a liability covered by the policy is asserted. Thus, it is only where the complaint sets forth true factual allegations showing no coverage that the suit is one for which liability insurance coverage is not afforded and for which the insurer need not provide a defense. . . . To excuse the duty to defend the petition must unambiguously exclude coverage under the policy . . . , and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.[11]

The allegation in the Harrises' complaint, that Saucer was an employee of the motor carrier operating the vehicle in the course of his employment, was sufficient to bring the case within the potential coverage of the insurance policy. The absence of an allegation that Metro owned the vehicle would not exclude the possibility of coverage even under the policy declarations, as the policy in fact provides coverage for nonowned vehicles.

Empire, however, argues that the policy by its terms imposed no obligation on it to defend the Harrises' suit. One provision of the policy gives Empire the right, and imposes upon it the duty, to defend an insured against a suit asking for bodily injury or property damages caused by an incident and resulting from ownership, maintenance, or use of a "covered auto." Empire claims that it had no defense obligation here, because the policy defines "covered autos" as those listed in the declarations.

Nonetheless, there is another clause in the policy which can be interpreted as imposing a duty on Empire to defend an insured

---

[11] (Citations, punctuation and emphasis omitted.) *Penn-America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565-566 (490 SE2d 374) (1997).

against any suit seeking damages to which the insurance applies. The Harrises' suit sought damages to which the Form F insurance coverage applied. "[W]here language of an insurance policy is ambiguous, it must be construed most strongly against the insurer and in favor of the insured. [Cit.]"[12] Applying this rule of construction, we hold that under the terms of the policy Empire had a duty to defend the underlying suit.

It is true that the insurance coverage mandated by Form F is not for the benefit of the motor carrier, which has not paid for the coverage, but rather is for the sole benefit of members of the public who have been injured by the carrier.[13] As shown by Empire, under a Form F endorsement, the insured agrees to reimburse the insurer for any payment which the insurer would not have been obligated to make under the terms of the policy except by reason of the obligation assumed under the endorsement. This provision does not, however, exclude an obligation by the insurer to provide a defense in a suit seeking damages to which the Form F coverage applies.

Nor, as a matter of law, would it preclude the recovery of damages for failure to defend. The insurer may have been able to defend the case at a lower cost than did the insured. Moreover, the Harrises are suing as assignees of the insured, and

> [w]hen the plaintiff is the insured seeking to recover for the insurer's breach of its contractual duty to defend, there is a factual question whether the breach may have caused the plaintiff to be exposed to greatly increased liability to the injured party. [Cit.][14]

4. Empire contends that the court erred in denying its motion for summary judgment on the Harrises' claim against it for failure to settle the case. We hold that although complete summary judgment was properly denied on this claim, Empire was entitled to partial summary judgment on the issue of recoverable damages.

> An automobile liability insurance company may be liable for damages to its insured for failing to adjust or compromise the claim of a person injured by the insured and covered by its liability policy, where the insurer is guilty of negligence or of fraud or bad faith in failing to adjust or compromise the claim to the injury of the insured. [Cit.] Hence,

---

[12] *Clark v. United Ins. Co. &c.*, 199 Ga. App. 1, 5 (4) (404 SE2d 149) (1991).
[13] *Raintree Trucking Co. v. First American Ins. Co.*, 245 Ga. App. 305, 306 (2) (534 SE2d 459) (2000).
[14] *Ga. Farm &c. Ins. Co. v. Martin*, 264 Ga. 347, 350-351 (3) (444 SE2d 739) (1994).

where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability. The reason for this rule is that the insurer "may not gamble" with the funds of its insured by refusing to settle within the policy limits. [Cits.][15]

Under *Southern Gen. Ins. Co. v. Ross*,[16] the plaintiffs, as assignees of Metro, may assert Metro's claim against Empire for compensatory damages for loss of property resulting from the insurer's bad faith failure to settle the underlying tort suit. We agree with the trial court that "it is a jury question as to whether Empire, in the face of the clear language of PSC Rule 1-8-1-.01, should have paid or settled at least a portion of the underlying judgment in accordance with the liability coverage limits set by the PSC."

We, however, agree with Empire that under the facts of this case there is no basis for the Harrises to recover the entire amount of the judgment from Empire as damages for this breach of duty. The Harrises never offered to settle the case within the applicable $200,000 limits of the policy's Form F endorsement. Although the Harrises' complaint contained allegations that Empire concealed the Form F endorsement, they do not now dispute that Empire informed them of the existence of this policy provision while their settlement demand was pending. It appears that none of the parties realized the import of the Form F endorsement until the Supreme Court decided *Ross v. Stephens*.

5. Empire complains of the trial court's refusal to allow it to depose the arbitrator in the underlying suit to show that Metro wilfully failed to present liability defenses in the arbitration proceeding and that the arbitration award was thus obtained by collusion of the parties. We agree that Empire should have been allowed to engage in discovery on these matters, which are relevant to issues of damages and proximate cause.

The Harrises argue that Empire is barred from vacating the arbitration award because it did not file an application to vacate within the time required by law after a copy of the award was delivered to it.[17] While that may be true, Empire may still defend this suit by showing that damages sustained by Metro were not proximately

---

[15] *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 870-871 (1) (310 SE2d 513) (1984).
[16] 227 Ga. App. 191, 195-196 (7) (489 SE2d 53) (1997); compare *Owens v. Allstate Ins. Co.*, 216 Ga. App. 650, 651 (1) (455 SE2d 368) (1995).
[17] OCGA § 9-9-13 (a), (c).

caused by its breach of duty.

6. Contrary to arguments advanced by Empire, the trial court ordered Metro to produce any settlement agreement entered into between it and the Harrises.

*Judgments affirmed in part and reversed in part. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 26, 2001 —
RECONSIDERATION DENIED APRIL 10, 2001 

*Middleton, Mathis, Adams & Tate, Charles A. Mathis, Jr., Cobb & Gardner, William J. Cobb, Herald J. A. Alexander, for appellants.*

*Gray, Hedrick & Edenfield, William E. Gray II, L. Bruce Hedrick, Linda M. Fitzgerald, for appellee.*