**TRANSPORTATION INSURANCE COMPANY, Plaintiff,**

v.

**FREEDOM ELECTRONICS, INC., Tony Shealy, Jarrett Black, Rodney J. Smith, John Slocum and Tronitec, Inc., Defendants.**

**No. CIV.A. 1:01–CV–2301–WBH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 22, 2003.

**1216**

Gilbert M. Malm, Jennifer Carpenter Kane, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Atlanta, GA, for plaintiff.

Lawrence Edwards Newlin, Frank Reid Olson, Lawrence E. Newlin & Associates, Richard Columbus Freeman, III, Office of Richard C. Freeman, III, Atlanta, GA, for defendants.

### ORDER

HUNT, District Judge.

Before the Court is Plaintiff's motion for summary judgment [66], and the FEI Defendants' cross motion for summary judgment [68].

### BACKGROUND

Defendants Smith, Black, Shealy, and Slocum (the FEI Defendants) are former employees of Defendant Tronitec, Inc. ("Tronitec"). Tronitec is in the business of providing test and analysis services for, and repair and re-manufacturing of, various electronic circuit boards and other devices used in the petroleum industry. Sometime in 1997, the FEI Defendants decided to form their own company—Freedom Electronics, Inc. ("FEI")—to compete with Trontitec. As part of their preparations to begin FEI, and while still employed at Tronitec, the FEI Defendants purchased from Plaintiff Transportation Insurance Company a general liability insurance policy ("the Policy") to take effect on January 6, 1998.[1] FEI was incorporated on December 30, 1997, and on January 5, 1998, Smith, Black, Shealy, and Slocum all resigned their positions with Tronitec. That evening, they faxed an announcement of the opening of FEI to a number of potential customers.

Tronitec filed a claim against the FEI Defendants in Cobb County Superior Court and a counterclaim against the FEI Defendants in Fulton County Superior Court, alleging that the FEI Defendants, in preparation to start this new venture, stole trade secrets and other property from Tronitec. Specifically, Tronitec alleges that while still employed at Tronitec, the FEI Defendants misappropriated certain trade secrets regarding the diagnosis, repair, re-manufacture, and shipping of Tronitec's products. Both pleadings seek money damages and injunctive relief and describe essentially identical claims for misappropriation of property and trade secrets, breach of the duty of loyalty, fraud, conversion, and RICO violations.

The FEI Defendants tendered to Plaintiff the above suits for coverage under the

1. The Policy is titled "Business Account Package Policy" and is attached to Plaintiff's motion for summary judgment [66] at Tab A. The section related to the owners' liability is found at Bates pp. 01856–01866 of Tab A.

"Advertising Injury" provisions of the Policy. The Policy provides, in relevant part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies. We will have the right and duty to defend any suit seeking those damages... (¶ A–1–a; Bates P01856)

This insurance applies to ... [an] Advertising Injury caused by an offense committed in the course of advertising your goods, products, or services but only if the offense was committed in the coverage territory during the policy period... (¶ A–1–b–2–b; Bates P01856)

"Advertising Injury" means injury arising out of one or more of the following offenses: ... (c) misappropriation of advertising ideas or style of doing business.... (¶ F–1; Bates P01863).

On August 27, 2001, Plaintiff filed this lawsuit, seeking a declaratory judgment that the Policy provides no coverage to Defendants and reimbursement of its defense costs. Plaintiff and the FEI Defendants have filed cross motions for summary judgment.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,

608 (11th Cir.1991). The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fairminded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

### The Duty to Defend

General rules of insurance contract construction require the Court to read the policy as a whole and to give the words their usual, common, and ordinary meaning. *See Bold Corp. v. National Union Fire Ins. Co.*, 216 Ga.App. 382, 383–84, 454 S.E.2d 582 (1995). Under Georgia law, ambiguities in an insurance contract must be construed favorably to the insured and against the insurer. *See Davis v. United American Life Ins. Co.*, 215 Ga. 521, 527, 111 S.E.2d 488 (1959). An insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may "potentially" come within the insurance coverage. *See George L. Smith II Ga. World Cong. Ctr. Auth. v. Miller Brewing Co.*, 255 Ga.App. 643, 644, 566 S.E.2d 361 (2002) (noting that the duty to indemnify and to defend are separate and independent obligations); *Driskell v. Empire Fire & Marine Ins. Co.*, 249 Ga.App. 56, 547 S.E.2d 360 ("the duty to defend exists if the claim potentially comes within the policy"). To determine whether an insurer owes its insured a duty to defend a particular lawsuit, a court

must compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the contract. *See Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau,* 144 F.3d 1372, 1375 (11th Cir.1998). In deciding whether coverage applies for an "advertising injury," the Court first must determine whether there has been an "advertising injury" and if so, whether there exists a "causal connection" between that injury and the "advertising activity" undertaken by the insured. *See Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179, 1187 (11th Cir.2002).

### *Advertising Injury*

■ The provision of the Policy that defines "advertising injury" is a common feature of general liability policies had has been the subject litigation in the Eleventh Circuit and other jurisdictions. *See e.g. Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179 (11th Cir.2002); *Frog, Switch & Mfg. v. Travelers Ins. Co.,* 193 F.3d 742 (3rd Cir.1999). The Policy lists four categories of covered harms that may constitute an "advertising injury," but the parties agree that only the provision encompassing "misappropriation of advertising ideas or style of doing business" is relevant in this case. Thus, the first question presented is whether the claims in the underlying suits constitute a "misappropriation of advertising ideas or style of doing business." Interpreting the phrase "misappropriation of advertising ideas or style of doing business," the Eleventh Circuit stated that an "advertising idea" is "any idea or concept related to the promotion of a product to the public." *Hyman,* 304 F.3d at 1188. A "style of doing business" is defined as "a company's comprehensive manner of operating its business" and includes the manner in which a company promotes, presents, and markets its products to the public. *See id.*

■ In order for allegations of unfair competition or misappropriation to be covered, they must involve an advertising idea, not just a non-advertising idea that is made the subject of advertising. *See Frog, Switch,* 193 F.3d at 748 (noting that while some causes of action for unfair competition, theft of trade secrets, or misappropriation may be covered by the standard general liability insurance policy, many are not.). The Court must examine the underlying pleadings to see if there has been appropriation of an advertising idea. *Compare id.* (finding no duty to defend where Lanham Act claim was based on allegation that insured illegally took a product design but where there was no allegation that insured took ideas about advertising); *EKCO Group Inc. v. Travelers Indem. Co.,* 273 F.3d 409 (1st Cir.2001) (finding that a claim for trade-dress infringement based on the design of a teapot did not involve advertising and, therefore, was not covered under the insurance policy); *with Sentex Sys. v. Hartford Accident & Indem. Co.,* 93 F.3d 578 (9th Cir.1996) (finding a duty to defend where complaint alleged misappropriation of trade secrets including customer lists, methods of bidding jobs, methods and procedures for billing, and marketing techniques but where there was no allegation of misappropriation of trade secrets relating to the manufacture and production of the product).

■ The FEI Defendants argue that Tronitec has alleged a misappropriation of a "style of doing business" in Tronitec's allegations that the FEI Defendants have taken, copied, and ultimately used, virtually all of Tronitec's business methods and practices, including Tronitec's system of shipping its products, re-manufacturing processes, accounting systems, quality control system, and inventory control system. Tronitec, who has filed a response to Plaintiff's motion for summary judg-

ment, agrees with the FEI Defendants and asserts that it has alleged that FEI misappropriated Tronitec's "style of doing business" by alleging that FEI stole its manufacturing processes, schematics, drawings, digital station interface box ("DSIB"), and test procedures. The Court finds the Defendants' arguments unpersuasive in light of the case law interpreting identical Policy language.

In *Frog, Switch,* the insured was alleged to have misappropriated trade secrets and confidential business information, including drawings and prints related to a product line of dipper buckets and then entered the dipper-bucket product market, using the stolen trade secrets and confidential business information. The underlying complaint alleged unfair competition and false advertising. The Third Circuit held that such allegations did not constitute misappropriation of a "style of doing business" because there were no allegations that the insured was trading on the recognizable name, mark, or product configuration (trade dress) of the plaintiff. What the insured took was not itself an idea about identifying oneself to customers or advertising dipper buckets. Additionally, there was no claim that the misappropriated dipper-bucket design served as an indication of origin or that the plaintiff's identifying marks were misused. Rather, the underlying complaint alleged that the insured took the dipper-bucket design itself and lied about the design's origin. *See id.* at 749. Given these facts, the Court found that the underlying complaint did not allege an advertising injury.

In *Novell, Inc. v. Federal Ins. Co.,* 141 F.3d 983 (10th Cir.1998), Novell/WordPerfect was sued by a plaintiff claiming that Novell misappropriated his research, development, and marketing efforts when Novell added a new feature to WordPerfect which the plaintiff claimed to have created. The Court, in analyzing an iden-

tical definition of "advertising injury" found that there was no misappropriation of trade dress since the plaintiff never alleged that Novell attempted to mimic the outward appearance of his product or that Novell misappropriated his comprehensive manner of operating his business. *See id.* at 987–88. Accordingly, the Court concluded that none of the plaintiff's claims against Novell constituted predicate "offenses" under the policy. *See id.*

In this case, Tronitec has not alleged that the FEI Defendants traded on the recognizable name, mark, or product configuration of Tronitec. Tronitec has not alleged that the FEI Defendants took an idea about identifying itself to customers or misused Tronitec's marks in identifying itself to customers. Nor has Tronitec alleged that FEI misappropriated its comprehensive manner of operating its business. For these reasons, the Court concludes that Tronitec has not alleged an advertising injury as defined by the Policy.

### 2. Causal Connection

■ Moreover, even if there had been a "misappropriation of advertising ideas or style of doing business," there is no causal connection between that injury and the advertising activity undertaken by the insured. In *Hyman,* the underlying lawsuit claimed patent infringement and unfair competition stemming from a company's manufacture and marketing of an allegedly infringing product. *See* 304 F.3d 1179. The Eleventh Circuit held that a claim for trade-dress infringement could, under certain circumstances, constitute a "misappropriation of advertising ideas or style of doing business," but only if there was a causal connection between advertising activity and the advertising injury. The Court noted that "[s]imply selling an infringing product is not sufficient to satisfy the causal connection requirement. Rath-

er, the infringement must be committed in an advertisement, rather than in the sale of a product, in order to be covered." *Id.* at 1192 (internal citations and quotations omitted). The Court concluded that there was a causal connection because the insured's "publication of advertisements featuring artwork similar to the artwork in [the plaintiff's] ads and promoting products substantially similar to [the plaintiff's] products designated by similar model numbers to [the plaintiff's] model numbers is sufficient to create a nexus between trade dress infringement and advertising." *Id.* at 1193–94.

Unlike the claims presented in *Hyman,* here there are no claimed injuries resulting from FEI's advertisements or promotion of its products. Rather, Tronitec claims that it is entitled to damages because the FEI Defendants stole its proprietary information. Tronitec also seeks to enjoin the FEI Defendants from "using, transferring selling or otherwise conveying any of [Tronitec's] 'trade secrets.'"[2] The facts presented in the underlying litigation indicate that the presence of FEI's allegedly stolen products in the marketplace— not the presence of FEI advertisements— caused Tronic damage. Tronitec's attempt to enjoin dissemination of the price list and display of the DSIB do not change the fact that the injury complained of did not occur in the course of advertising FEI's goods, products, or services, as is required by paragraph A–1–b–2–b of the Policy, and by

*Hyman.*[3] The Court concludes that there is no connection between FEI's advertising activities and Tronitec's injuries that triggered Plaintiff's duty to defend. *See Pierce Companies, Inc. v. Wausau Underwriters Ins. Co.,* 1999 WL 1011862, 1999 U.S.App. LEXIS 29504 (9th Cir.1999) (finding no causal connection where that the gravamen of the complaint was that the insured had misappropriated the plaintiff's trade secrets, not that the insured had improperly marketed or advertised the product); *see also Robert Bowden, Inc. v. Aetna Cas. & Sur. Co.,* 977 F.Supp. 1475, 1480 (N.D.Ga.1997) (Evans, J.) ("In other words, an insured's advertising must have been the cause of whatever injury is alleged in the underlying suit.").

Plaintiff's motion for summary judgment is GRANTED. Plaintiff has no duty to defend the FEI Defendants in the underlying litigation because there has been no advertising injury, and, even if there were such an injury, there is no causal connection between the injury and FEI's advertising activity.

### Plaintiff's claim for reimbursement

■ On November 24, 1999, the parties entered into a Bilateral Reservation of Rights and Defense Agreement (the "Agreement") in which the FEI Defendants waived any claim for bad faith, and Plaintiff agreed to assume the defense of the actions despite its contention that the claims were not subject to coverage.[4] Cit-

---

2. Included in the general request for injunctive relief is Tronitec's specific request that the FEI Defendants be enjoined from disseminating price lists and displaying the DSIB. These two requests for relief are not contained in the pleadings, but were requested at a preliminary injunction hearing. Although no transcript of that hearing was prepared, Plaintiff does not dispute that Tronitec sought to enjoin dissemination of the price list and display of the DSIB.

3. The FEI Defendants point to evidence that, prior to the resignation of the Freedom Defendants, Tronitec gave tours of its facility which included in-use demonstrations of DSIB to its customers. They argue that Tronitec's attempt to prohibit FEI from displaying the DSIB on the same kinds of tours shows that there has been an advertising injury. The Court disagrees. There has been no allegation of an injury arising out of such tours.

4. The Agreement is attached to Plaintiff's motion for summary judgment [66] at Tab F.

ing no authority, Plaintiff claims that under the Agreement, it is entitled to reimbursement of costs it has incurred to date defending the FEI Defendants. The Agreement does not provide for such reimbursement. It provides, in relevant part:

> Carrier hereby agrees to assume defense of the claims presented by the underlying litigation from the date such claims were originally tendered to Carrier, agreed to be March 9, 1999, unless and until such time as it is established in a court of law that no duty to defend exists under the subject policy.

In the absence of a provision requiring reimbursement or case law instructing the Court. otherwise, the Court is unwilling to require the FEI Defendants to repay the costs already expended by Plaintiff. The Agreement clearly envisions that Plaintiff was required to pay for the defense "unless and until such time" that a court found no duty to defend. That is exactly what has happened here. As set forth in the Agreement, Plaintiff has provided the defense, and as of the date of this Order is no longer under such an obligation. Plaintiff, however, is not entitled to any other relief. Accordingly, Plaintiff's request for reimbursement of costs already expended in the defense of the FEI Defendants is DENIED.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment [66] is GRANTED IN PART AND DENIED IN PART. The FEI Defendants' cross motion for summary judgment [68] is DENIED. The Clerk is DIRECTED to CLOSE THIS CASE. All pending motions are DENIED AS MOOT.