A03A0121. EMPIRE FIRE & MARINE INSURANCE COMPANY
v. DRISKELL et al.
(585 SE2d 657)

RUFFIN, Presiding Judge.
This insurance dispute is before us for a second time.[1] In the instant appeal, Empire Fire & Marine Insurance Company ("Empire") challenges the trial court's order requiring Empire to pay Christine Harris and the estate of Edmund Harris ("the Harrises") post-judgment interest on a $3,150,000 judgment entered against Metro Courier, Inc. ("Metro"), Empire's insured. Finding no error, we affirm.

The relevant facts are detailed in *Driskell v. Empire Fire &c. Ins. Co.*[2] In October 1995, a vehicle owned by Metro and driven by its employee collided with a vehicle occupied by Mr. and Mrs. Harris. At the time, Metro, a motor carrier engaged in intrastate transportation of property for hire, had a $1,000,000 liability insurance policy issued by Empire.

The policy's schedule of "covered autos" did not include the Metro vehicle involved in the collision. Nevertheless, under rules promulgated by the Georgia Public Service Commission, a motor carrier's insurance policy must "provide minimum liability coverage in the amounts of $100,000 per person and $300,000 per incident regard-

---

[5] *Downs v. State*, 270 Ga. 310 (509 SE2d 40) (1998).
[6] *Davis v. State*, 274 Ga. 865 (561 SE2d 119) (2002).
[1] See *Driskell v. Empire Fire &c. Ins. Co.*, 249 Ga. App. 56 (547 SE2d 360) (2001). We also addressed a related dispute in *Empire Fire &c. Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670 (507 SE2d 525) (1998).
[2] *Driskell*, supra.

less of whether motor vehicles involved in an incident 'are specifically described in the policy or not.' "[3] Metro's liability insurance policy contains a "Form F" endorsement amending the policy to reflect this mandatory coverage.

The Harrises sued Metro and its employee for injuries sustained in the collision.[4] Metro asked Empire to provide a defense, but Empire refused, asserting that the Metro vehicle was not covered under the policy. The Harrises and Metro elected to arbitrate the claim, which resulted in a $3,150,000 award in favor of the Harrises. Pursuant to a settlement reached by the parties, Metro consented to entry of judgment on this award and assigned its rights against Empire to the Harrises. The Harrises subsequently brought this suit against Empire to collect part or all of the judgment.

The trial court granted in part and denied in part Empire's motion for summary judgment, and the parties cross-appealed. In resolving those appeals, we held that, although the Metro vehicle was not specifically listed in the liability policy, the Form F endorsement provided coverage in the amount of $200,000 — $100,000 each for the Harrises.[5] We also reversed the trial court's order granting summary judgment to Empire on the Harrises' claim, as Metro's assignees, that Empire breached its duty to defend Metro.[6] In so doing, we found that the policy imposed on Empire a duty to defend the insured "against any suit seeking damages to which the insurance applies" — including coverage under Form F.[7] Thus, we concluded, Empire had a duty to defend Metro in the underlying suit.[8]

Following remand, Empire paid the Harrises $200,000 plus interest. The Harrises claimed, however, that Empire also owed them interest on the entire $3,150,000 judgment entered against Metro. The trial court agreed, granting the Harrises summary judgment and ordering Empire to pay interest on the full judgment accruing through the date Empire tendered the $200,000. Empire now appeals this ruling.

The "Supplementary Payments" section of Metro's liability policy forms the basis of the Harrises' claim. That section provides:

> In addition to the Limit of Insurance, we will pay for the "insured" . . . [a]ll interest on the full amount of any judgment that accrues after entry of the judgment in any "suit"

---

[3] Id. at 59 (1).

[4] Mr. Harris died during the pendency of the litigation, and the administratrix of his estate was substituted as a party plaintiff.

[5] See id. at 59-60 (1), (2).

[6] See id. at 61 (3).

[7] Id. at 61-62.

[8] See id. at 62.

we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

According to the Harrises, the plain terms of this provision require Empire to pay post-judgment interest on the entire judgment entered against Metro. On appeal, Empire does not seek to avoid the supplementary payment language on the ground that it never actually defended Metro. Instead, it claims that Metro was not an "insured" in this instance because the vehicle at issue was not a "covered auto" under the policy.

In *Driskell*, however, we necessarily concluded that Metro was an "insured" for purposes of this case. The policy compelled Empire "to defend any 'insured' against a 'suit' asking for . . . damages" to which the insurance applied. Based on this language, we found, as a matter of law, that Empire owed a duty to defend Metro in this suit, which involves a claim covered by the Form F endorsement.[9] In reaching this result, we had to conclude that Metro was an insured because Empire's duty to defend extended only to such " 'insured.' " Furthermore, throughout our discussion, we referred to Metro as "the insured" and to the Harrises as the "assignees of the insured."[10] And we noted that the Form F endorsement required "the insured" to reimburse Empire for any payments made under the endorsement.[11]

Under OCGA § 9-11-60 (h), "any ruling by . . . the Court of Appeals . . . shall be binding in all subsequent proceedings in that case in the lower court and in . . . the Court of Appeals." As long as the evidentiary posture of the case remains the same, the law of the case bars relitigation of issues previously resolved by this Court.[12] In our prior decision, we determined that Metro was an "insured" under the policy for this incident. The case's evidentiary posture has not changed. Accordingly, we will not revisit this ruling.[13]

Empire also argues that the policy terms, including the supplementary payment provision, do not apply to this incident because our decision in *Driskell* established that "no contract of insurance existed between Empire and [Metro] for unscheduled vehicles." We disagree. Undoubtedly, we refused to extend the $1,000,000 policy limit to an

---

[9] See id. at 61-62.

[10] See id. at 62.

[11] See id. Empire does not argue that the Form F language requiring reimbursement precludes Metro and its assignees from seeking supplementary payments based on a liability arising out of the endorsement.

[12] See *In re Spruell*, 237 Ga. App. 259, 260 (515 SE2d 190) (1999).

[13] See id.; *McLean v. Continental Wingate Co.*, 222 Ga. App. 805, 807 (1) (476 SE2d 83) (1996) (physical precedent only) (issue that was necessarily resolved against appellant in prior appeal could not be relitigated).

unscheduled vehicle.[14] But we rejected Empire's claim that the policy offered no coverage.[15] Instead, we found that the Form F endorsement enlarged the scope of the policy to include unscheduled vehicles up to the statutory minimum.[16] And we concluded that the policy's duty to defend applied to coverage under that endorsement.[17]

Empire further notes that its duty to pay under the supplementary payment provision "ends when [it has] paid . . . the part of the judgment that is within its Limit of Insurance." According to Empire, because the $1,000,000 policy limit does not apply here, its "Limit of Insurance" is $0. Thus, Empire claims, it never had a duty to pay under the provision.

Again, we disagree. Although the $1,000,000 policy limit is not applicable, the Form F endorsement supplied coverage in this case. By its terms, the endorsement "amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with [state law] to the extent of the coverage and limits of liability required thereby." As discussed above, the endorsement extended the coverage for unscheduled vehicles to the minimum liability under Georgia law — in this case $200,000.[18] Given this endorsement, we cannot conclude that Empire's "Limit of Insurance" is $0. Moreover, we must construe any ambiguity in the supplementary payment provision " 'most strongly against the insurer and in favor of the insured.' "[19] Viewing the provision favorably to Metro, we find that the "Limit of Insurance" in this case is $200,000.

The record shows, therefore, that Empire's policy furnished Metro — the insured — with liability coverage for the vehicle in this incident. By virtue of this coverage, Empire owed Metro a duty to defend. And, under the insurance contract, Empire agreed to pay the insured interest on the *full amount* of any judgment entered in a suit that Empire defended or, Empire apparently concedes, should have defended.[20]

Empire claims that allowing the Harrises to collect interest on

---

[14] See *Driskell*, supra at 59.

[15] See id. at 58 ("Empire inaccurately asserted that its policy provided no coverage.").

[16] See id. at 58, 60; see also *Ross v. Stephens*, 269 Ga. 266, 268-269 (496 SE2d 705) (1998) ("An endorsement is a provision added to an insurance contract whereby the scope of its coverage is restricted or enlarged. The terms of such an endorsement take precedence over printed portions of the policy in conflict therewith.") (citation and punctuation omitted).

[17] See *Driskell*, supra at 62.

[18] See id. at 58 ("The endorsement . . . had the effect of providing liability insurance for vehicles not described in the policy. . . . As a result, the combined insurance coverage available to Mr. and Mrs. Harris would be $200,000.").

[19] Id. at 62.

[20] See *Southern Gen. Ins. Co. v. Ross*, 227 Ga. App. 191, 194 (2) (489 SE2d 53) (1997) (under supplementary payment provision, insurance company required to pay interest on entire judgment, not just the amount of the judgment covered by its policy limits).

the entire $3,150,000 judgment would improperly create coverage where none exists, since we have already limited the liability under the policy to $200,000. Rather than creating additional coverage, however, a supplementary payment provision helps guarantee that the insured "will quickly receive the primary amount the insurer is obligated to pay under the policy after judgment . . . by making it expensive for the insurer to delay."[21] Empire delayed payment here, authorizing use of this provision.

We recognize that Empire's potential payment under the policy has been extended beyond the statutory minimum coverage. In *Driskell*, for example, we engrafted the duty to defend onto the Form F endorsement, thus requiring insurers to incur costs associated with defending claims involving unscheduled vehicles. And in this case, we have applied the supplementary payment provision to claims arising out of Form F. As discussed above, however, our decision in *Driskell* requires this result. Accordingly, the trial court properly granted the Harrises summary judgment on their claim for post-judgment interest.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JULY 1, 2003 —
RECONSIDERATION DENIED JULY 18, 2003 — 

*Gray, Hedrick & Edenfield, William E. Gray II, L. Bruce Hedrick, Jr.*, for appellant.

*Mayfield, Commander & McMenamy, Scott C. Commander, Herald J. A. Alexander, Charles A. Mathis, Jr.*, for appellees.

---

[21] *Ins. Co. of Pennsylvania. v. Giles*, 196 Ga. App. 271, 273 (2) (395 SE2d 833) (1990).