**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 30, 2024**

# In the Court of Appeals of Georgia

A24A0286. REEVES et al. v. ALLSTATE INSURANCE COMPANY

DILLARD, Presiding Judge.

John and Ginger Reeves appeal the trial court's grant of a directed verdict in favor of Allstate Insurance Company on their claim for breach of its obligations under an insurance policy. The Reeveses contend the court erred in doing so when (1) they complied with the policy's two-year limitation period in bringing their claim; and (2) the Georgia Standard Fire Policy is applicable to the policy, which they claim creates a two-year limitation period as a matter of law. For the following reasons, we affirm.

A trial court may only direct a verdict if "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions

therefrom, shall demand a particular verdict."[1] If there is *any* evidence—even slight evidence—to support the opposing party's case, granting a directed verdict is improper.[2] Importantly, this Court reviews the grant of a motion for directed verdict *de novo*, and we must construe the evidence in favor of the nonmovant.[3] And here, the trial court granted a directed verdict to Allstate based on its interpretation of an insurance policy, which is a matter of law and likewise subject to *de novo* review.[4] With these guiding principles in mind, we turn now to the Reeveses' enumerated claims of error.

---

[1] *Miller v. Lynch*, 351 Ga. App. 361, 362 (830 SE2d 749) (2019) (punctuation omitted); *accord Lockhart v. Bloom*, 360 Ga. App. 741, 741 (859 SE2d 918) (2021).

[2] *Miller*, 351 Ga. App. at 362; *see Lockhart*, 360 Ga. App. at 742 ("A grant of directed verdict can be upheld only [when] we determine that all the evidence demands that verdict.").

[3] *Miller*, 351 Ga. App. at 362; *King v. Ga. Dep't of Corr.*, 347 Ga. App. 606, 606 (820 SE2d 445) (2018).

[4] *See* OCGA § 13-2-1 ("The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact."); *Albritton v. Kopp*, 300 Ga. 529, 531 (796 SE2d 676) (2017) ("Contract construction is a question of law for the court that is subject to de novo review." (punctuation omitted)); *Stankovich v. Axis Ins. Co.*, 365 Ga. App. 877, 877 (880 SE2d 366) (2022) ("[C]onstruction of contracts is ordinarily a matter of law for the court." (punctuation omitted)).

The Reeveses owned a home in Fayetteville, which was severely damaged by a storm when trees fell on their house on March 31, 2020. At the time of the loss, the Reeveses were insured by Allstate; and after Allstate failed to pay all sums due for the loss,[5] the Reeveses filed suit against it on March 31, 2022. Specifically, the Reeveses made claims for breach of contract based on Allstate's failure to pay for their covered losses, and they requested no less than $432,221.00 for this breach, bad-faith damages under OCGA § 33-4-6, and attorney fees.

Allstate failed to answer the complaint, and on June 13, 2022, the Reeveses filed a motion for entry of default judgment against the company. On June 15, 2022, the trial court granted the default judgment as to liability. Then, on September 25, 2023, a jury trial commenced solely on the issue of damages. It was undisputed at trial—and remains undisputed on appeal—that there was no damage to the Reeveses' home as the result of fire.

At the conclusion of the case, Allstate moved for a directed verdict on several grounds, including that the Reeveses were not entitled to recover damages because

---

[5] The company issued the Reeveses a check in the amount of $46,638.78, which they did not cash—though they did cash other checks for coverage of personal property. The Reeveses described the house as a "total loss," and claimed they could not afford to tear down the house and rebuild it from scratch.

they failed to timely file suit under the terms of the policy—which included a one-year suit limitation.[6] The Reeveses explicitly stated on the record that they did not contend Allstate waived or was estopped from raising the one-year suit limitation, but they instead argued that a two-year limitation applied to the case due to the policy's fire endorsement. And because the Reeveses made no argument that Allstate waived the one-year suit limitation, the trial court concluded it had no choice but to direct a verdict as a matter of law based on its reading of the contract and relevant caselaw.

The Reeveses now appeal from the trial court's grant of the motion for directed verdict in favor of Allstate. And once again, the Reeveses maintain the trial court erred in doing so when (1) the text of the policy contains a two-year limitation period in which to file suit, with which they complied; and (2) the Georgia Standard Fire Policy is applicable to the policy, creating a two-year suit limitation period as a matter of law. We will address these contentions together.

But first, we begin by briefly highlighting an argument the Reeveses do *not* make on appeal. They do not contend Allstate waived its right to assert the one-year-suit limitation contained in the policy by reason of the default judgment below. This is

---

[6] Allstate had not previously moved for summary judgment on this ground.

perfectly understandable. Indeed, unlike a statute-of-limitation defense (which must be properly raised or is waived), a contractual-suit limitation—such as the one at issue here—is a *policy* defense and *not* an affirmative defense that must be delineated in an answer.[7] And importantly, we have previously explained that a policy defense *survives* default judgment and may be asserted at a trial on damages because "while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein."[8] As our Supreme Court has rightly

_____

[7] *Compare Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 697 (4) (527 SE2d 293) (1999) ("Default judgment had been entered against [appellant] before it raised a statute of limitation defense. Statute of limitation is an affirmative defense which must be properly raised or it is waived . . . . [Appellant's] statute of limitation defense was foreclosed by the entry of default judgment against it." (citations omitted)), *with Willis v. Allstate Ins. Co.*, 334 Ga. App. 540, 542 n.1 (779 SE2d 744) (2015) ("The contractual suit limitation is a policy defense and not an affirmative defense included within OCGA § 9–11–8 (c), such as a statute of limitation, that must be set forth in an answer."). *See generally Wright Assoc. v. Rieder*, 247 Ga. 496, 500 (2) (277 SE2d 41) (1981) (holding that workers' compensation statutory employer defense is not an affirmative defense).

[8] *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 501–02 (2) (740 SE2d 413) (2013) (punctuation omitted); *see id.* at 502 (3) (explaining that trial court "erred by holding that [insurance company] cannot . . . offer defenses, including policy defenses at trial [on damages]"); *see also Stroud v. Elias*, 247 Ga. 191, 193 (275 SE2d 46) (1981) (per curiam) (holding that a default judgment "operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration," but "[c]onclusions of law, and facts not well pleaded and forced inferences are not

5

acknowledged, "[c]onclusions of law, and facts not well pleaded and forced inferences are not admitted by a default judgment."[9] So, in this case, the trial court was faced with a policy defense based on the interpretation of a contract, which is purely a matter of law.[10]

Turning now to the arguments that *are* made on appeal, the Reeveses assert that—despite their policy's inclusion of a one-year suit limitation—the attached fire endorsement "changed the suit limitation period for 'any claim' under the Policy to two years." Put another way, the Reeveses claim the fire endorsement modified the *entire* policy to unambiguously provide for a two-year suit limitation, and so they contend their complaint was timely filed within that time period. Alternatively, they argue the two-year period applies as a matter of Georgia law. We disagree.

---

admitted by a default judgment" so "[t]he failure to answer or to appear at trial serves as an admission of the facts alleged in the complaint, but not of the conclusions of law contained therein") (punctuation omitted)).

[9] *Stroud*, 247 Ga. at 193 (punctuation omitted); *accord Fink v. Dodd*, 286 Ga. App. 363, 365 (1) (649 SE2d 359) (2007).

[10] *See Albritton*, 300 Ga. at 531 ("Contract construction is a question of law for the court that is subject to de novo review."(punctuation omitted)); *Stankovich*, 365 Ga. App. at 877 ("[C]onstruction of contracts is ordinarily a matter of law for the court." (punctuation omitted)).

Under Georgia law, contracts of insurance are "interpreted by ordinary rules of contract construction."[11] But these rules of construction only apply if the language of the contract is unclear or ambiguous in some respect.[12] If the language is "clear and unambiguous," a court merely "enforces the contract according to its clear terms" and looks to the agreement alone for its meaning.[13] And every insurance contract "shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy."[14]

Here, the Reeveses' policy with Allstate explicitly provides that, for personal property protection, "[a]ny suit or action must be brought within one year after the inception of loss or damage." To be sure, a separate endorsement for "Standard Fire

---

[11] *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327 (498 SE2d 492) (1998); *Park 'N Go of Ga., Inc. v. U.S. Fid. & Guar. Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996) ("An insurance policy is governed by the ordinary rules of contract construction.").

[12] *See City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (3) (743 SE2d 381) (2013) ("[I]f the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity." (punctuation omitted)).

[13] *Id.* (punctuation omitted).

[14] OCGA § 33-24-16.

7

Policy Provisions" was attached to the policy, which provides at the top of the document in boilerplate language—similar to that used on the other attached policy endorsements—that "[t]he following endorsement changes your policy" and the "form contains the provisions of the *Standard Fire Policy.*"[15] It further provides that "[w]henever the terms and provisions of Section I[16] can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply." And the endorsement for the fire policy includes a two-year suit limitation as follows: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss."

The Reeveses construe the foregoing language to mean that the so-called fire endorsement amended the entirety of their policy such that "any claim" within that endorsement applies to any claim for property damage—whether by fire or other cause (such as a storm). But the *subject* of the fire endorsement relates only to property

---

[15] (Emphasis supplied).

[16] "Section I" is entitled "Your Property" and includes coverage for Dwelling Protection, Other Structures Protection, and Personal Property Protection.

8

damage caused *by fire*; and so by its plain language, the fire endorsement conclusively establishes that it only amends provisions of the overall policy relating to damage caused *by fire*.[17]

The provisions of the "Standard Fire Policy" in the fire endorsement regarding the perils *not* included in "the policy" refer to fire, providing there is no coverage for "order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy" and "neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises." Additionally, the fire endorsement provides that Allstate is not liable for a loss occurring "as a result of explosion or riot, unless fire ensue[s], and in the event for loss *by fire only*."[18]

---

[17] *See, e.g.*, *Boardman Petroleum*, 269 Ga. at 327 (explaining that when the language is "clear and unambiguous," a court merely "enforces the contract according to its clear terms" and looks to the agreement alone for its meaning); *cf. Haberman v. The Hartford Ins. Grp.*, 443 F3d 1257, 1266 (A) (1) (10th Cir. 2006) (looking to endorsement in its entirety to conclude that, by its plain language in naming each form of coverage, it added a new individual for coverage for all purposes under the policy except for liability coverage, which was limited to the extent of the liability coverage provided in the liability portion of the policy).

[18] (Emphasis supplied).

Unsurprisingly, all of the foregoing language tracks the language of Georgia's Standard Fire Policy *regulation*.[19]

Additionally, the policy's fire endorsement provides that Allstate is insuring against "all direct loss by *fire*, lightning and other perils insured against in this policy including removal from premises endangered by the perils insured against in this policy, except as hereinafter provided."[20] And because the immediately preceding paragraph refers to the fire endorsement as containing provisions of "the Standard Fire *Policy*,"[21] the subsequent references to "policy" are to *itself*—the Standard Fire Policy as required by regulation.[22] In other words, a suit or action for recovery of "any claim" on the Standard Fire Policy is subject to a two-year suit limitation. So, because the overall subject of the fire endorsement is narrowly limited to property damage *by*

---

[19] *See* Ga. Comp. R. & Regs. 120-2-19-.01.

[20] (All-caps omitted) (Emphasis supplied).

[21] (Emphasis supplied).

[22] *See Ross v. Stephens*, 269 Ga. 266, 269 (496 SE2d 705) (1998) (holding that an insurer's liability under endorsement was limited to that which was required by statute rather than to the policy limits which applied to vehicles described in the policy), *relied upon for this proposition in Driskell v. Empire Fire & Marine Ins. Co.*, 249 Ga. App. 56, 59 (1) (547 SE2d 360) (2001).

*fire*, its suit limitation does not take precedence over the entire policy because it does not conflict with the one-year limitation applicable to *other* causes of damage.[23]

Our reading of the relevant policy is bolstered by the Supreme Court of Georgia's decision in *White v. State Farm Fire & Casualty Co.*,[24] in which it concluded that the two-year statute of limitation that is applicable, by regulation,[25] to standard fire policies does *not* apply to other forms of coverage within the insurance contract as a matter of law, so long as the *fire* portion conforms to the regulation.[26] In doing so,

---

[23] *See Ross*, 269 Ga. at 269 ("An endorsement is a provision added to an insurance contract whereby the scope of its coverage is restricted or enlarged. The terms of such an endorsement take precedence over printed portions of the policy in conflict therewith."), *relied upon for this proposition by Empire Fire & Marine Ins. Co. v. Driskell*, 262 Ga. App. 447, 450 n.16 (585 SE2d 657) (2003). *But see Shingler v. Ga. Farm Bureau Mut. Ins. Co.*, 369 Ga. App. 95, 96 (1) (892 SE2d 395) (2023) (holding that amendatory endorsement was clear and unambiguous when it provided that "[a]ny action must be started within two years after the date of loss for the peril of fire" and that "[f]or all other perils, any action must be started within one year after the date of loss").

[24] 291 Ga. 306 (728 SE2d 685) (2012).

[25] *See* Ga. Comp. R. & Regs. 120-2-19-.01 (providing, in the Standard Fire Policy of Georgia, that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two (2) years next after inception of the loss").

[26] *White*, 291 Ga. at 308-09 (1) (construing Ga. Comp. R. & Regs. 120-2-20-.02 and OCGA § 33-32-1 (a) to conclude that the regulation "imposes the Standard Fire

our Supreme Court invalidated Georgia Regulation 120-2-20-.02 as having exceeded the insurance commissioner's authority.[27] And although *White* concerned application

Policy's two-year statute of limitations on all property insurance policies providing first-party insurance coverage for loss or damage to any type of real or personal property" with the effect that "all property loss coverage contained in multiple line insurance contracts, whether the loss is occasioned by fire or otherwise, must conform to the requirements of the Standard Fire Policy" when the Code Section instead "indicates that the required terms of the Standard Fire Policy, which would include the two-year statute of limitations, must be incorporated *only* into the fire coverage provisions of a multiple line policy"); *see* OCGA § 33-32-1 (a) ("No policy of fire insurance covering property located in this state shall be made, issued, or delivered unless it conforms as to all provisions and the sequence of the standard or uniform form prescribed by the Commissioner, except that, with regard to multiple line coverage providing other kinds of insurance combined with fire insurance, this Code section shall not apply if the policy contains, with respect to the fire portion of the policy, language at least as favorable to the insured as the applicable portions of the standard fire policy and such multiple line policy has been approved by the Commissioner."); Ga. Comp. R. & Regs. 120-2-20-.02 ("No property, casualty, credit, marine and transportation, or vehicle insurance policy providing first party insurance coverage for loss or damage to any type of real or personal property shall contain a contractual limitation requiring commencement of a suit or action within a specified period of time less favorable to the insured than that specified in the "Standard Fire Policy" promulgated by the Commissioner in Chapter 120-2-19-.01 of these Rules and Regulations. The time limitation on filing suit imposed by this Rule is applicable only to the portion or portions of the policies providing first party property insurance coverage. Liability coverage and workers compensation coverage are specifically exempted from the requirements of this Rule.").

[27] *White*, 291 Ga. at 309 (1) ("[T]he Commissioner exceeded his legal authority when he promulgated [Ga. Comp. R. & Regs.] 120–2–20–.02, such that a multiple-line insurance policy providing first-party insurance coverage for theft-related property damage must be reformed to conform with the two-year limitation period provided for

of the two-year suit limitation to a claim based upon theft, nothing in the Supreme Court's opinion suggests its reasoning would not also apply to property-damage claims arising from a cause other than fire. As a result, *White* not only supports our reading of the policy but also forecloses the Reeveses' argument that their policy includes a broadly applicable two-year suit limitation as a matter of law.

Accordingly, the trial court did not err in granting a directed verdict in favor of Allstate, and we affirm the trial court's judgment.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

in Georgia's Standard Fire Policy.").