A96A2134, A96A2135. KINARD v. NATIONAL INDEMNITY COMPANY (two cases).
A96A2136. ROSS v. NATIONAL INDEMNITY COMPANY.
A96A2137. ROSS et al. v. NATIONAL INDEMNITY COMPANY.
(483 SE2d 664)

POPE, Presiding Judge.

On April 24, 1989, plaintiffs Albert and Jack Ross were injured when the vehicle they occupied was struck by a GMC truck driven by defendant Malcolm Stephens and owned by defendant John Kinard d/b/a Roy Bishop Housemovers. It is undisputed Kinard is an intrastate motor common carrier that has been issued a Certificate of Public Convenience and Necessity by the Public Service Commission.[1] Following the collision, Albert Ross and his wife brought suit for negligence and loss of consortium against Kinard and Stephens. Jack Ross sued Kinard and Stephens solely for negligence. Pursuant to OCGA § 46-7-12 (e), the Rosses also sued defendant National Indemnity Company based on the fact that National had issued a business auto insurance policy to Kinard and filed the requisite certificate of insurance and "Form F" endorsement with the PSC on Kinard's behalf. See OCGA § 46-7-12 (a)-(c); PSC Rules 1-8-1-.01 & 1-8-1-.07, Forms E & F.

On July 31, 1995, National moved for partial summary judgment. In its motion, it claimed that the truck that collided with Jack and Albert Ross was not "covered" under the express terms of the policy it issued to Kinard, and as a result, that any liability on its part arose solely from the Form F endorsement it filed with the PSC. Based on the above contention and the language in the endorsement, National further claimed its liability was limited to the minimum compulsory liability limits established by the PSC at the time of the collision rather than the limits set forth in the policy issued to

---

[1] Pursuant to OCGA § 46-7-27, the PSC is empowered with the authority to implement rules and orders governing motor common carrier operations in this state.

Kinard.[2] The trial court agreed and granted National's partial summary judgment motion. Kinard appeals the trial court's ruling in Case Nos. A96A2134 and A96A2135. Jack Ross appeals in Case No. A96A2136 and Albert Ross and his wife appeal in Case No. A96A2137.

## Case Nos. A96A2134 & A96A2135

1. Kinard contends that there are issues of material fact as to whether he was covered under the insurance policy he had with National at the time of the collision, and thus, that the trial court erred in granting partial summary judgment to National with regard to that matter. We disagree.

The insurance policy at issue was in effect from May 7, 1988 to May 7, 1989 and provided liability coverage to Kinard up to $750,000 for "all sums [Kinard] legally must pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'" The policy expressly defined which of Kinard's autos were covered thereunder by making reference to the numeric symbol placed next to each of the specific types of coverage listed under "ITEM TWO" of the policy's declarations page. In this case, the symbol listed next to "LIABILITY" coverage found under ITEM TWO is a "7." According to the specific terms of the policy, when symbol 7 is listed next to a certain type of coverage found in ITEM TWO of the declarations page, that coverage extends "[o]nly to those 'autos' described in ITEM THREE of the Declarations for which a premium charge is shown. . . ." The policy further provides that "if symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an[y] 'auto' Kinard acquired would be a covered 'auto' for that coverage *only if* . . . [National] already covered all 'autos' that Kinard owned for that coverage or [the acquired auto] replace[d] an 'auto' [Kinard] previously owned that had that coverage; *and* . . . [Kinard told National] within 30 days after [he] acquired it that [he] wanted [National] to cover it for that coverage." (Emphasis supplied.)

The policy's declarations page demonstrates that the truck in question was not listed under "ITEM THREE." Nor was the truck acquired by Kinard after the policy went into effect. To the contrary, Kinard's deposition testimony shows that the truck was acquired in 1987, when it was purchased. See *Lumbermens Mut. Cas. Co. v. Commercial Union Assur. Co.*, 155 Ga. App. 908 (273 SE2d 649) (1980).

---

[2] At the time of the collision in question, the PSC had established the minimum statutory compulsory liability limits for motor carriers to be $100,000 per person and $300,000 per occurrence. PSC Rule 1-8-1-.01.

Additionally, while there is some evidence that the truck served as a replacement for a vehicle listed on the declarations page, it is undisputed that Kinard did not notify National that he wanted liability coverage for the truck within 30 days of its acquisition. Accordingly, Kinard was not covered under the express terms of the policy based on the unambiguous language found within the policy. And, the policy must be enforced against Kinard as written. *Fidelity &c. Co. of Maryland v. Sun Life Ins. Co. of America*, 174 Ga. App. 258, 260 (1) (329 SE2d 517) (1985).

As the trial court determined, Kinard is also not entitled to coverage under the policy for any damages he must pay to the Rosses based on his claim that his insurance agent, Jack Harte, told him that he had coverage for the truck after Kinard requested Harte to have the truck added to the policy shortly before the collision. Even if Harte made such a representation to Kinard, which is in question, the representation is not binding on National absent the existence of an actual or apparent agency relationship between Harte and National. In this case, no such relationship existed.

Harte was an independent insurance agent. Independent insurance agents generally are considered agents of the insured, not the insurer, absent evidence that the insurer granted the independent agent authority to bind coverage on the insurer's behalf. See *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678 (2) (445 SE2d 791) (1994); *European Bakers, Ltd. v. Holman*, 177 Ga. App. 172, 174 (2) (338 SE2d 702) (1985); *Alexander Underwriters General Agency v. Lovett*, 177 Ga. App. 262, 265 (2) (339 SE2d 368) (1985). Here, Harte's unrefuted deposition testimony demonstrates that he never had been granted the authority to bind coverage. Moreover, Harte specifically denied that he was National's agent, and that bare denial constitutes a statement of fact, which in this case was not challenged by any competent evidence. See *Addley v. Beizer*, 205 Ga. App. 714, 716 (423 SE2d 398) (1992). Thus, Harte was not National's actual agent.

The record further demonstrates that no apparent agency existed between Harte and National. To prove "apparent or ostensible agency, the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury." (Citation and punctuation omitted.) *Kirby*, 213 Ga. App. at 678 (2). In the instant case, there simply is no evidence that National ever held Harte out as its agent or that Harte ever communicated Kinard's alleged request to have the truck added to the policy to any agent of National during the applicable policy period. Contrary to Kinard's assertion, a review of the policy itself does not create a material issue of fact as to Harte's status because the policy does not, as Kinard contends, demonstrate

that Harte countersigned it as National's authorized representative.

The fact that Harte issued several certificates of insurance to Kinard also does not create an issue of fact regarding whether National ever held Harte out as its agent. The unrefuted evidence shows that the certificates in question were produced and generated by Harte at Kinard's request and that they were signed by Harte as an authorized representative of Harte Insurance Agency, rather than National. Although one might assume or infer an agency relationship existed between Harte and National based on Harte's issuance of the certificates, "[w]here the only evidence that a person is an agent of another party is the mere assumption that such an agency exist[s], or an inference drawn from the actions of [the apparent agent indicating] that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists." (Citation and punctuation omitted.) *Howard v. St. Paul Fire &c. Ins. Co.*, 180 Ga. App. 802, 804 (350 SE2d 776) (1986).

In light of the above, the trial court correctly granted partial summary judgment to National regarding Kinard's assertion of coverage under the policy.

### Case Nos. A96A2136 & A96A2137

2. On appeal, the Rosses and their amici contend that the trial court erred in granting partial summary judgment to National regarding National's claim that any liability it might have was limited to the statutory minimum compulsory liability limits for motor common carriers in effect at the time of the collision, as established by the PSC pursuant to OCGA §§ 46-7-12 (c) and 46-7-27, rather than the maximum liability limits set forth in the policy. This contention is based on PSC Rule 1-8-1-.01, which in pertinent part provides that: "no certificate [of public convenience and necessity] or permit shall be issued to a motor carrier, or shall remain in force unless and until there shall have been filed with and approved by the [PSC] a surety bond, policy of insurance (or certificate of insurance in the form prescribed herein in lieu thereof) . . . in not less than the amounts hereinafter prescribed, conditioned to pay, within the amount of such surety bond, policy of insurance (or certificate of insurance in the form prescribed herein in lieu thereof), . . . any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, . . . *regardless of whether such motor vehicles are specifically described in the policy or not.*" (Emphasis supplied.) It is argued that the above-emphasized language obligates National to pay the amount of any judgment recovered, up to the maximum limits of the

policy, even though the truck involved in the collision was not listed as a covered auto under the policy. We reject this argument.

As the trial court noted, PSC Rule 1-8-1-.01 only describes the insurance policy a motor carrier must have in lieu of bond, that is, one conditioned to pay a judgment resulting from injury due to negligent operation or maintenance of any of the motor carrier's vehicles regardless of whether the specific vehicle involved is described in the policy. Contrary to the Rosses' assertions, the above-mentioned rule does not mandate coverage for liability resulting from the negligent use or maintenance of undescribed or unscheduled vehicles in excess of the minimum limits established by the PSC. This becomes evident when Rule 1-8-1-.01 is read in conjunction with PSC Rule 1-8-1-.07, which sets forth the procedure for filing a certificate of insurance in lieu of the actual indemnity policy. Rule 1-8-1-.07 expressly prescribes the form that a certificate of insurance must take and requires that a Form F endorsement be filed along with the certificate. By its terms, the Form F endorsement "amends [any indemnity] policy [issued to a motor carrier] to provide insurance for automobile bodily injury and property damage liability in accordance with [state motor carrier] law and regulations *to the extent of the coverage and limits of liability required thereby. . . .*" (Emphasis supplied.)

In the instant case, National filed the appropriate certificate of insurance and Form F endorsement with the PSC on Kinard's behalf, and thus, brought Kinard into compliance with PSC Rule 1-8-1-.01. By doing so, National also guaranteed that no innocent member of the public would be injured by any of Kinard's trucks without the benefit of being able to recover at least the minimum indemnity insurance benefits required by law, thereby fulfilling the legislative purpose behind this state's motor common carrier law and rules. See *Progressive Cas. Ins. Co. v. Bryant*, 205 Ga. App. 164, 165 (421 SE2d 329) (1992); *Seawheels, Inc. v. Bankers &c. Ins. Co. of New York*, 175 Ga. App. 528, 531 (2) (333 SE2d 650) (1985). Based on the language in the policy and the endorsement, National also expressly limited its liability under the policy to the minimum statutory limits established by the PSC with regard to injuries resulting from the operation of any of Kinard's unscheduled vehicles. To hold otherwise would be to create coverage where none previously existed under contract or statute. This should not be done. *Fidelity*, 174 Ga. App. at 260 (1). Moreover, a contrary holding would be inconsistent with the well settled principle that an insurance company issuing a policy to a motor carrier in lieu of the bond required under OCGA § 46-7-12 cannot be obligated to provide coverage in excess of that fixed by the policy and the statute. See *Carolina Cas. Ins. Co. v. Davalos*, 246 Ga. 746 (272 SE2d 702) (1980); *LaHatte v. Walton*, 53 Ga. App. 6, 13 (184 SE 742) (1936). We are not persuaded to the contrary by the holding in

*Herring v. Rabun Trucking Co.*, 147 Ga. App. 713 (250 SE2d 167) (1978), because there is no indication that the policy at issue in that case had been amended by an endorsement similar to the Form F endorsement involved in the case at bar.

Accordingly, the trial court did not err in granting partial summary judgment to National, thereby limiting its liability in the case to the minimum amount required by this state's motor carrier law and rules.

*Judgments affirmed. Andrews, C. J., and Smith, J., concur.*

DECIDED MARCH 5, 1997 — ▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*Temple, Strickland & Counts, William D. Temple, William A. Dinges*, for Kinard.

*Philip M. Casto*, for the Rosses.

*Long, Weinberg, Ansley & Wheeler, Kenneth M. Barre, Scott A. Polhemus*, for National Indemnity Company.

*Franklin, Taulbee, Rushing, Bunce & Brogdon, W. M. Brogdon, Jr., Lawrence J. Pond*, amici curiae.

