S97G0965. ROSS et al. v. STEPHENS et al.
(496 SE2d 705)

BENHAM, Chief Justice.

Jack Ross, a minor, and his father, Albert Ross, were injured in 1989 when the vehicle in which they were traveling collided with a tractor-trailer operated by Malcolm Stephens and owned by Jack Kinard d/b/a Roy Bishop Housemovers (Kinard). Jack and his father, individually and as Jack's next friend, filed a personal injury suit against Stephens and Kinard, a motor common carrier. See OCGA § 46-1-1 (9) (B). Appellee National Indemnity Company was joined in the action pursuant to OCGA § 46-7-12 (e) since it had issued a policy of motor carrier insurance to Kinard and had filed a certificate of insurance and a "Form F" policy endorsement with the Georgia Public Service Commission on Kinard's behalf. However, the Kinard vehicle involved in the collision with the Rosses was not identified as a "scheduled vehicle" on the declarations page of National Indemnity's insurance policy. Claiming that the unlisted Kinard vehicle was not covered by the insurance policy but by the statutory "Form F" endorsement, National Indemnity sought partial summary judgment limiting its potential liability to the statutory minimum compulsory liability limits ($100,000/300,000) rather than the $750,000 coverage of its policy with Kinard. The trial court granted partial summary judgment to the insurer on the coverage issue and the Court of Appeals affirmed. *Kinard v. National Indem. Co.,* 225 Ga. App. 176 (2) (483 SE2d 664) (1997). We granted a writ of certiorari to determine whether a rule promulgated by the Public Service Commission (PSC), the regulator of motor common carriers in Georgia (OCGA § 46-7-2), makes an intrastate motor common carrier's insurer liable for the amount of coverage provided by its policy or for the statutory minimum coverage when the motor common carrier's vehicle involved is not specifically described in the insurance policy.

A motor common carrier may not operate in Georgia without obtaining from the PSC a certificate of public convenience and necessity (OCGA § 46-7-3), and a certificate is not issued unless the applicant gives and maintains bond, with adequate security "for the protection of the public against injuries proximately caused by the

negligence of such motor carrier, its servants, or its agents." OCGA § 46-7-12 (a). In lieu of bond, the certificate holder may file a policy of indemnity insurance which is approved by the commission and substantially conforms to all the statutory provisions relating to bonds (§ 46-7-12 (c)), or the commission may permit a motor common carrier to self-insure. OCGA § 46-7-12 (d). Whatever means the common carrier chooses to evidence its potential financial responsibility to the motoring public, the bond, insurance, or self-insured plan "is a direct and primary obligation" to any person who sustains actionable injury or loss as a result of the negligence of the common carrier or its agents. *Great American Indem. Co. v. Vickers*, 183 Ga. 233, 236 (188 SE 24) (1936). Stated another way, the purpose of the insurance "is not for the benefit of the insured [motor common carrier] but for the sole benefit of those who may have a cause of action for damages for the negligence of the motor common carrier," making the insurance policy "in the nature of a substitute surety bond [which] creates liability in the insurer regardless of the insured's breach of the conditions of the policy. [Cit.]" *Progressive Cas. Ins. Co. v. Bryant*, 205 Ga. App. 164, 165 (421 SE2d 329) (1992). The issue in the case at bar is the extent of the financial responsibility of the insurer of the motor common carrier which causes an actionable loss or injury by means of a vehicle not specifically described in the insurance policy.

It is undisputed at this point that National Indemnity issued to Kinard a policy of insurance with coverage of $750,000 on several specified trucks and a tractor, none of which was involved in the collision with the Rosses. Because of the strong public policy to provide protection to the motoring public, the PSC, pursuant to its statutory power to adopt rules and orders necessary to enforce the statutory scheme (OCGA § 46-7-27), promulgated Rule 1-8-1-.01 of the Rules of the Georgia Public Service Commission. It provides:

No motor carrier subject to the provisions of the Motor Carrier Act of 1931 . . . shall engage in intra-state or interstate or foreign commerce, and no certificate or permit shall be issued to a motor carrier . . . unless and until there shall have been filed with and approved by the Commission a surety bond, policy of insurance (or certificate of insurance in the form prescribed herein in lieu thereof), . . . in not less than the amounts hereinafter prescribed, conditioned to pay, within the amount of such surety bond, policy of insurance (or certificate of insurance in the form prescribed herein in lieu thereof), . . . any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or

permit, or for loss or damage to property of others . . . regardless of whether such motor vehicles are specifically described in the policy or not.

The quoted portion of Rule 1-8-1-.01 requires that a motor common carrier have a surety bond or insurance policy or certificate of insurance which provides injured members of the motoring public with financial recompense for bodily injury or death and property damage caused by a motor common carrier's vehicle, even if the motor carrier's vehicle which caused the injury was not specifically described in the policy of insurance. That insurance coverage must be "not less than the amounts hereinafter described." The rule goes on to set out the minimum limits of the liability of the insurer or bonding company: $100,000 for bodily injury to or the death of one person, with a $300,000 limit of bodily injuries to or death of all persons injured or killed in any one accident. It is clear that Rule 1-8-1-.01 requires the motor common carrier to provide proof of financial responsibility for injuries sustained by the public due to a vehicle owned by an insured motor carrier but not specifically described in the policy of insurance executed by the insurer and the motor carrier. The question before us now is whether Rule 1-8-1-.01 engrafts the insurance policy's coverage to all the vehicles owned by the motor carrier, whether described or not, or whether the rule requires the issuer of an insurance policy to pay to the injured party only the statutory minimum set out in the rule for vehicles not described in the policy.

We conclude that Rule 1-8-1-.01 mandates coverage for vehicles not specifically described in the policy and sets forth the minimum coverage that must be provided, but we cannot glean from the rule the coverage National Indemnity agreed to provide Kinard should a Kinard vehicle not described in the insurance policy cause an actionable loss to a member of the public. That is, as the trial court and the Court of Appeals observed, the rule only describes the bond or insurance a motor common carrier must have to operate (one that is conditioned to pay a judgment regardless of whether the vehicle involved was described in the insurance policy), and sets out the minimum amount of coverage that must be provided by the bond or insurance coverage obtained by the motor common carrier. To discern the coverage provided in this case, we must look to the insurance policy and its endorsements executed by National Indemnity and Kinard.

The parties executed a "Form F" endorsement[1] to the insurance policy. An endorsement is "[a] provision added to an insurance contract whereby the scope of its coverage is restricted or enlarged. The

---

[1] The endorsement was in the form approved by the PSC (Form F) for such endorsements. See Rule 1-8-1-.07 (e), Rules of the Georgia Public Service Commission.

terms of such an endorsement take precedence over printed portions of the policy in conflict therewith." Webster's New International Dictionary (2d ed. Unabridged) (1940). The "Form F" endorsement which National Indemnity and Kinard executed and which was filed with the PSC stated that it

> amend[ed] the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations [promulgated by the PSC] to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

By executing the "Form F" endorsement, National Indemnity agreed to provide the automobile bodily injury and property damage liability coverage for losses caused by the motor common carrier's vehicles not specifically identified in the insurance policy that PSC Rule 1-8-1-.01 required. The endorsement went on to limit National Indemnity's liability regarding coverage for the unidentified vehicles to that which was required by the PSC regulation: $100,000 per person injured or killed, with a $300,000 maximum per incident.

We conclude that the insured and the insurer agreed that the insurer would pay the statutory minimum to a party injured by a Kinard vehicle not specifically identified in the insurance policy. The State's public policy is achieved by the assurance to the motoring public of existence of the financial compensation the PSC has deemed minimally necessary for a motor common carrier to receive a certificate of public convenience and necessity, and the insurer has provided no more than the liability coverage it agreed to provide the motor common carrier. See *Carolina Cas. Ins. Co. v. Davalos*, 246 Ga. 746 (272 SE2d 702) (1980), where this Court noted that an injured member of the public cannot recover from the insurer any more than the liability fixed by the insurer's contract of insurance and the statute. The trial court did not err in awarding partial summary judgment to National Indemnity, and the Court of Appeals was correct in affirming that judgment.

*Judgment affirmed. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

In my opinion, Rule 1-8-1-.01 of the Georgia Public Service Commission (Commission), as properly construed, imposes on the insurer

a requirement to provide coverage up to the actual limits of its policy, without regard to whether all of the motor carrier's vehicles are specifically listed in the policy. Therefore, the Court of Appeals' affirmance of the grant of summary judgment in favor of the insurer in this case should be reversed, and I respectfully dissent to the majority's contrary holding.

The purpose of a policy issued pursuant to OCGA § 46-7-12 is not to benefit the motor carrier, but to benefit those who are injured by the negligent operation of the carrier's vehicles. *Great American Indem. Co. v. Vickers*, 183 Ga. 233, 236 (188 SE 24) (1936). The Commission's Rules are promulgated to effectuate this purpose. See *Great American Indem. Co. v. Vickers*, 53 Ga. App. 101, 104-105 (185 SE 150) (1936), aff'd, *Great American Indem. Co. v. Vickers*, 183 Ga., supra. Therefore, the Rules must be interpreted so as to protect those members of the public who have claims based upon the negligent operation of the motor carrier's vehicles.

By its terms, Rule 1-8-1-.01 merely provides that the insurance policy must afford coverage in "not less than" certain prescribed amounts, regardless of whether the carrier's "motor vehicles are specifically described in the policy or not." Nothing in this Rule authorizes the insurer to provide coverage in the minimum prescribed amounts for claims arising from the operation of motor vehicles which are not specifically described, while furnishing coverage in greater amounts for claims arising from the operation of the specifically described motor vehicles. The Rule clearly indicates that the prescribed limits of coverage are the minimum which are acceptable to cover claims for damages arising from the operation of the carrier's motor vehicles, whether or not listed in the policy. Thus, all of the carrier's vehicles must be covered by the same limits, which limits must be at least as great as those prescribed in Rule 1-8-1-.01. Accordingly, where, as here, the insurer has issued a policy which has higher limits, those higher limits apply even as to claims for damages arising from the operation of one of the carrier's vehicles which was not specifically described in the policy. See *Herring v. Rabun Trucking Co.*, 147 Ga. App. 713 (250 SE2d 167) (1978).

As did the Court of Appeals, the majority finds support for its holding in the "Form F" endorsement which was executed by the insurer and the motor carrier. However, this "Form F" merely amends the policy generally so as to afford insurance "to the extent of the coverage and limits of liability required by" the applicable statutes and Rules. Form F further provides

> "that the [motor carrier] agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy

except by reason of the obligation assumed in making such certification."

The majority concludes that this general language has the effect of incorporating the *minimum* coverages of Rule 1-8-1-.01 as the specific applicable limits of coverage afforded for the carrier's unlisted vehicles. However, I believe that the "Form F" requirement refers to the *actual limits* of liability coverage of a particular policy, which limits cannot be "less than," but can be more than, those prescribed by Rule 1-8-1-.01. Thus, Rule 1-8-1.01 requires the insurer to afford the *same* amount of coverage for claims arising from the negligent operation of *all* of the carrier's motor vehicles, but "Form F" obligates the carrier to reimburse the insurer for any payment made for a claim arising from the negligent operation of a vehicle which was not specifically described in the policy. Therefore, the risk of loss from the carrier's failure to list all of its vehicles would fall, as it should, on the carrier, rather than on the insurer or the injured party.

In my opinion, the majority's construction of Rule 1-8-1-.01 and "Form F" is not supported by the language of either and is contrary to the intent underlying OCGA § 46-7-12 to benefit those who are injured by the negligent operation of a carrier's vehicles. For these reasons, the judgment of the Court of Appeals should be reversed.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED MARCH 2, 1998 —
RECONSIDERATION DENIED APRIL 2, 1998.

*Philip M. Castro,* for appellant.
*Long, Weinberg, Ansley & Wheeler, Kenneth M. Barre, Haas, Bridges & Kane, Alvin L. Bridges, Jr., Temple, Strickland & Counts, William D. Temple,* for appellees.
*Robert A. Del Bello, John G. Nelson,* amicus curiae.