S03Q0854. PROGRESSIVE PREFERRED INSURANCE COMPANY
v. RAMIREZ.
(588 SE2d 751)

BENHAM, Justice.

We are called upon in this case to answer two questions certified to us by the United States Court of Appeals for the Eleventh Circuit pursuant to constitutional and statutory authority. 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9 (a). We have been asked to determine whether an insurer's failure to notify the Georgia Public Service Commission ("PSC") of the insurer's cancellation of coverage after the insurance policy lapsed for nonpayment of premiums, continues the policy and its limits of liability, or continues the minimum limits of insurance coverage under the certificate of insurance attesting to the fact that the insured had obtained at least the minimum insurance coverage required by law, earlier filed by the insurer with the PSC. We are also asked to examine whether a limitation of liability clause in the insurance policy limits coverage to the statutory minimum when the insurance policy has lapsed but the insurer has not notified the PSC of the cancellation of coverage. *Ramirez v. Progressive Preferred Ins. Co.*, 321 F3d 1055 (11th Cir. 2003).

The questions arose in the following context. In April 1999,[1] Progressive Preferred Insurance Company ("Progressive") issued a policy to Paul Haney covering trucks used in his business and, in order to comply with Rule 1-8-1-.01 of the PSC, sent a certificate of insurance to the PSC ("Form E") in July 1999. When Haney did not pay the premiums, Progressive cancelled the policy in July 1999 by giving notice to Haney, but did not give notice to the PSC until September 1999, after Ramirez's mother was killed in a vehicular collision involving one of Haney's trucks. Ramirez obtained a $1,000,000 wrongful death judgment against Haney and filed suit in the Superior Court of Coweta County against Progressive seeking the $500,000 limits of the policy Progressive had issued to Haney. Progressive removed the case to the United States District Court for the Northern District of Georgia, which granted summary judgment to

---

[1] All the events involved in this case occurred prior to the effective date of OCGA Ch. 40-16, transferring from the Public Service Commission to the Department of Motor Vehicle Safety the responsibility for regulating motor carriers. All references herein are to the statutes and rules in effect when this case arose.

Ramirez. Progressive appealed to the Eleventh Circuit which found Georgia law unclear on two points and certified two questions of law to this Court.[2]

1. OCGA § 46-7-3 requires motor carriers to obtain a certificate of public convenience which may not be issued until a surety bond or evidence of a policy of indemnity insurance is filed with the PSC. OCGA § 46-7-12. PSC Rule 1-8-1-.01 mandates motor carriers provide a surety bond or proof of insurance of $100,000 coverage for bodily injury to or for the death of one person, and $300,000 for bodily injuries to or for the death of all persons injured or killed in an accident caused by a motor carrier. Evidence of the minimum insurance coverage or coverage in greater amounts must be provided by filing with the PSC the actual policy or a certificate of insurance.[3] Rule 1-8-1-.07 (c) provides that "policies of insurance, endorsement, or certificates of insurance . . . shall be continuous and shall not be cancelled or withdrawn until 30 days notice in writing by the insurance company . . . has been given to the [PSC]."

Progressive contends its liability is based on the certificate it submitted to the PSC rather than the policy it issued to Haney. Progressive argues that Rules 1-8-1-.01, permitting the filing of a certificate of insurance in lieu of filing the actual policy, and 1-8-1-.07 (c), providing that "policies of insurance . . . or certificates of insurance . . . shall not be cancelled . . . until . . . notice . . . has been given the [PSC]," should not be read together to provide that the policy certified by the certificate to be in effect remains in effect until the certificate of insurance is cancelled by way of proper notice to the PSC. Rather, Progressive argues, a certificate of insurance has a legal existence separate from the insurance policy the existence of which it certifies, and since Progressive filed a certificate of insurance rather than the actual policy with the PSC, it is liable only for the statuto-

---

[2] Those questions are:

1. When a Form E filed with the PSC provides that an insurance company has issued its insured an insurance policy "effective from 04/16/99 . . . continuing until cancelled as provided herein" by "giving thirty (30) days notice in writing to the [PSC]," and when the policy lapses for nonpayment two days before the accident at issue but before the company has given 30 days notice to the PSC, is the insurer liable on the policy itself (i.e., a continuation of the policy and its limits of liability) to a third party injured by the insured, as opposed to being liable on the certificate for the minimum coverage obligations imposed by law?

2. Does subsection 1 of the "Limit of Liability" section of PART I — LIABILITY TO OTHERS limit coverage to the statutory minimum *only* with respect to the scope of the substantive coverage described in Part I of the policy, or does that language also limit all coverage to the statutory minimum when the policy has lapsed as between the insurance company and its insured but before the insurer has provided the 30 day cancellation notice required under Georgia law?

[3] The contents of the certificate, known as a Form E certificate, are prescribed by PSC Rule 1-8-1-.07 (d).

rily-mandated coverage of $100,000, not the $500,000 limit under the actual policy.

We disagree. PSC Rule 1-8-1-.01 allows insurers to file a certificate of insurance in lieu of filing the actual policy, the existence of which is mandatory under OCGA § 46-7-12. The certificate of insurance is not an insurance policy, but merely serves to assure the PSC that the motor carrier has complied with the requirement of providing either a surety bond or insurance for the protection of the motoring public. By filing the Form E certificate, the insurer certifies to the PSC that it "has issued a policy . . . of insurance effective from [a stated date] and continuing until cancelled . . . by . . . giving thirty (30) days notice to the . . . [PSC]." Thus, the language of the Form E certificate demonstrates it is the policy of insurance, not the certificate, which establishes the extent of the insurer's liability. Progressive's argument that if the certificate were intended to provide the full coverage of the policy, it would have a place on it to show the extent of coverage ignores the fact that the required information on the certificate includes the policy number, which would make establishment of the extent of coverage simple. We conclude, therefore, that under PSC Rule 1-8-1-.07, policies of insurance evidenced by a Form E certificate filed with the PSC remain in effect until cancelled as prescribed by the rule.

Our conclusion is supported by prior decisions of the appellate courts of Georgia. In *Smith v. Nat. Union Fire Ins. Co.*, 127 Ga. App. 752, 753 (195 SE2d 205) (1972), the Court of Appeals addressed the question whether, as between the insurer and the public, an insurance policy issued to a motor carrier continues in effect until cancelled by notice to the PSC. The court determined that "until proper notice is given to the [PSC], the policy is effective for the benefit of the public." More recently, in *DeHart v. Liberty Mut. Ins. Co.*, 270 Ga. 381 (2) (509 SE2d 913) (1998), this Court determined that a person injured by a motor carrier could recover under the motor carrier's expired insurance policy when the injury occurred before the insurer filed a notice of termination with the PSC. Though the Court did not have before it the question whether such recovery would be pursuant to the certificate of insurance or the insurance policy, we stated that "the policy continued until the PSC received proper written notice of cancellation," thereby lending support to our conclusion today that the injured party may recover pursuant to the uncancelled policy of insurance rather than pursuant to the certificate of insurance filed with the PSC. The underlying rationale of the holdings in *Smith* and *DeHart* is the same as that underlying our decision here: filing a Form E certificate of insurance establishes that a specified policy of insurance has been issued to the motor carrier and that policy continues in effect until cancelled by giving notice to the PSC.

The decision in *Ross v. Stephens*, 269 Ga. 266 (496 SE2d 705) (1998), does not require a different result. In *Ross*, the issue was the existence of coverage for a vehicle not identified by the insured for inclusion in the policy of insurance, and the insurer's execution of a Form F endorsement. We concluded there that, in the absence of policy coverage for the vehicle, the insurer's execution of the Form F endorsement was the basis for its liability to the injured public for losses caused by the insured's vehicle not identified in the insurance policy, and that the liability limits were those set forth in the endorsement. Here, the issue is the amount of insurance coverage in place for a vehicle covered by the insurance policy when an insurer has filed a Form E endorsement certifying the existence of insurance coverage on the vehicle, but then fails to give notice to the PSC of the termination of that policy.

Accordingly, we answer the first question certified in this case in the affirmative: When a Form E endorsement filed with the PSC provides that an insurance company has issued its insured an insurance policy and the policy lapses before an incident giving rise to liability on the part of the insured and before proper notice of cancellation is given to the PSC, the insurer's liability to a third party injured by the insured is based on the policy itself as opposed to liability based on the minimum coverage imposed by law.

2. Since we have concluded that the insurer's liability is based on its policy of insurance, the Eleventh Circuit asks us to consider whether the policy's provision limiting the insurer's liability to pay damages to others is applicable to the situation presented by this case. The policy sets out 24 circumstances that result in exclusion of coverage. The policy then states a limitation on liability:

> If we are required by any applicable filing which we have made on your behalf to provide coverage not otherwise provided by this policy under this PART I — LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If we are required to make any payment under this policy that would not have been made except for the certification, you must reimburse us.

We conclude the limitation comes into play when the insurer's liability is based, not on the policy, but on the "applicable filing." See, e.g., *Ross v. Stephens*, supra, 269 Ga. at 269, where the insurer's liability for damages caused by a vehicle not covered by the policy was based, not on the policy, but on its filing of a Form F endorsement, wherein the insurer agreed to provide insurance coverage in accordance with PSC regulations, "to the extent of the coverage and limits of liability

required thereby. . . ." In the case at bar, Progressive's liability is based on its policy which continued in effect until after 30 days notice in writing of termination had been given to the PSC. PSC Rule 1-8-1-.07. Since Progressive did not file its notice of cancellation with the PSC until after the collision that is the basis for this litigation, the insurance policy was in effect at the time of the collision. Accordingly, we answer the second certified question by stating that the policy's limitation on liability does not apply to the case at bar.

*Questions answered. All the Justices concur.*

DECIDED NOVEMBER 17, 2003.

*Shur, McDuffie, Williams & Morgan, Michael L. Morgan, Schindel, Farman & Lipsius, Laurence J. Rabinovich*, for appellant. *Wood, Odom & Edge, Gus L. Wood III*, for appellee.