S10G0619. SAPP et al. v. CANAL INSURANCE COMPANY.

(706 SE2d 644)

HUNSTEIN, Chief Justice.

In April 2007, appellant Pamela Sapp was injured in a car accident when her car was struck by a dump truck driven by David Lamb and owned by Lamb's employer, Entra Demond Blackmon, d/b/a EDB Trucking. Sapp and her husband sued Lamb and EDB in Tift County Superior Court; the Sapps also filed a federal lawsuit against EDB's insurer, appellee Canal Insurance Company. Thereafter, Canal filed a declaratory judgment action in Tift Superior Court, as to which the Sapps filed a counterclaim, seeking a declaration that the accident was not covered under the subject insurance policy. Specifically, Canal claimed that, because the accident undisputedly occurred outside the 50-mile radius-of-use limitation set forth in the insurance policy, injuries resulting from the accident were not covered under the policy. On cross-motions for summary judgment, the trial court granted Canal's motion, finding no coverage with respect to the Sapps' claims, and dismissed with prejudice all claims against Canal. The Court of Appeals affirmed, finding that EDB's insurance policy was a basic automobile liability policy rather than a motor carrier policy; that the policy was thus not subject to statutory minimum liability limits imposed on motor carrier policies; and that the 50-mile radius-of-use limitation in the policy was therefore valid and operated to preclude coverage for claims arising out of the accident. *Sapp v. Canal Ins. Co.*, 301 Ga. App. 596 (688 SE2d 375) (2010). This Court granted the Sapps' petition for writ of certiorari to consider the applicability of the Georgia Motor Carrier Act, OCGA § 46-7-1 et seq., and the validity of the 50-mile radius-of-use limitation under the circumstances presented here. As explained more fully below, we find that the Motor Carrier Act does apply in this case and that the 50-mile radius-of-use limitation is thus invalid. Accordingly, we reverse.

1. The threshold issue in this case is whether the insurance policy issued to EDB by Canal was a motor carrier policy subject to Georgia's Motor Carrier Act.[1] The Court of Appeals found as a

---

[1] Since the accident at issue herein, the Motor Carrier Act has been revised on several occasions with modifications both technical and substantive, and its implementing regulations, promulgated by the Public Service Commission, have been revised and renumbered. See Transportation Rules of the Public Service Commission, Chapter 515-16-11 (revised May 6, 2008). Citations herein to the Act refer to the current version, except where the version in effect at the time of the accident differs materially from the current version, in which case we cite to the law in effect at that time and make note thereof. Citations to the PSC Transportation Rules refer, unless otherwise specified, to the rules in effect at the time of the accident, which have been included in the record. Transportation Rules of the Public Service Commission, Chapter 7 (adopted Jan. 17, 2006).

matter of fact that it was not, citing the absence of any evidence that EDB had ever obtained a motor carrier permit as required at the time under the Act and its implementing regulations and the lack of a "Form F" endorsement to the policy, which would have signified the policy's status as a motor carrier policy. See *Ross v. Stephens*, 269 Ga. 266, 268-269 (496 SE2d 705) (1998).[2] Though there appears to be no dispute that EDB failed to obtain the permit required to operate as a motor carrier and that the insurance policy did not include a Form F endorsement, we do not find these facts dispositive as to the applicability of the Motor Carrier Act.

"The state motor carrier acts were enacted to protect members of the general public against injuries caused by the negligence of a Georgia motor carrier." (Footnote omitted.) *DeHart v. Liberty Mut. Ins. Co.*, 270 Ga. 381, 385 (1) (509 SE2d 913) (1998). A "motor carrier of property" is defined under Georgia law as "a motor common or contract carrier engaged in transporting property, except household goods, in intrastate commerce in this state." OCGA § 46-1-1 (8). A motor carrier, which may be classified either as a "common" or "contract" carrier,[3] is one which "own[s], control[s], operat[es], or manag[es] any motor propelled vehicle . . . used in the business of transporting for hire of persons or property . . . on the public highways of Georgia." OCGA § 46-1-1 (9) (B); see also OCGA § 46-1-1 (9) (A). Transporting "for hire" is defined as "an activity wherein for payment or other compensation a motor vehicle and driver are furnished to a person by another person . . . ." OCGA § 46-1-1 (6). As Canal states in its pleadings, EDB at the time of the accident "operated a dump truck business." Specifically, as the undisputed evidence shows, EDB was in the business of furnishing a dump truck and driver, for compensation, to haul crushed rock and like materials on the public roadways of Georgia. There can thus be no dispute that EDB was at the relevant time a motor carrier of property under Georgia law.

The provisions of the Motor Carrier Act in effect at the time of the accident required a motor carrier of property to obtain a permit from the State Revenue Commissioner as a prerequisite to operating on the State's public highways. Former OCGA § 46-7-15.1, Ga. L.

---

[2] Under the current rules, the Form F is no longer utilized. Frank E. Jenkins III & Wallace Miller III, *Georgia Automobile Insurance Law*, § 46:6 (a) (2010 ed.).

[3] Common carriers are distinguished from contract carriers in that they "undertake[ ] to carry, and hold[ ] [themselves] out as ready to receive for carriage, goods for hire, which [they are] accustomed to carry, for all people indifferently so long as [they have] room." *McIntyre v. Harrison*, 172 Ga. 65, 66 (5) (157 SE 499) (1931). This distinction is of no consequence in this case.

2005, p. 334, § 28-3.[4] As a condition of obtaining such permit, the carrier was required to obtain a policy of indemnity insurance to protect the public against injuries proximately caused by the negligence of such carrier or its agents. Former OCGA §§ 46-7-12 (a), 46-7-12.1 (a), Ga. L. 2005, p. 334, § 28-2.1; former PSC Transp. Rule 7-2.1 (a), (c). The PSC's Transportation Rules fixed minimum amounts of such insurance at $100,000 per person and $300,000 per occurrence. Former PSC Transp. Rule 7-2.1 (f).[5] Persons injured by motor carriers were provided a right of action against not only the carrier but directly against its insurer as well. Former OCGA §§ 46-7-12 (c), 46-7-12.1 (c), supra; former PSC Transp. Rule 7-2.1 (e).[6] These so-called "direct action" provisions of the Act "establish 'an independent cause of action against the carrier's insurer on behalf of a member of the public injured by the carrier's negligence.'" (Footnote omitted.) Frank E. Jenkins III & Wallace Miller III, *Georgia Automobile Insurance Law*, § 46:1 (c) (2010 ed.). Under this scheme, the insurer "is equivalent to a provider of a substitute surety bond, creating automatic liability in favor of a third party who may have a claim for damages for the negligence of the motor common carrier. [Cit.]" *Andrews v. Yellow Freight System, Inc.*, 262 Ga. 476 (421 SE2d 712) (1992). See also *Ross*, supra, 269 Ga. at 267 (insurance required by Act " 'is a direct and primary obligation' to any person who sustains actionable injury or loss as a result of the negligence of the common carrier or its agents").

In this case, as found by the Court of Appeals, there is no evidence that EDB ever obtained a permit to operate in Georgia as a motor carrier.[7] However, contrary to the Court of Appeals' determination, EDB's noncompliance with its responsibility to obtain a permit had no impact on its status as a Georgia "motor carrier of property"; while the failure to get a permit rendered EDB in violation of the Motor Carrier Act, it did not render EDB any less a "motor carrier of property" under applicable law. See *Georgia Automobile Insurance Law*, supra, § 46:5 ("[a] prima facie case [under the direct action statute] is established by showing that the carrier meets the general definition of 'motor common carrier' or

---

[4] This particular provision of the Act, applicable specifically to motor carriers of property, was repealed in 2009 as part of the Legislature's implementation of the federal Unified Carrier Registration Act. See Ga. L. 2009, p. 629, §§ 5, 10 (b). Similar permitting requirements continue to apply to motor carriers of household property and passengers. See OCGA § 46-7-3.

[5] These mandatory minimum liability amounts continue in force under current rules. PSC Transp. Rules, § 515-16-11-.03 (5).

[6] This right of action continues under current law as to motor carriers of household goods and passengers. OCGA § 46-7-12 (c).

[7] While Mr. Blackmon deposed vaguely that "I did whatever I had to do to drive in the state of Georgia," he adduced no evidence of having ever applied for the required permit.

'motor contract carrier' "); *Great Am. Indem. Co. v. Vickers*, 183 Ga. 233, 236-237 (188 SE 24) (1936) ("The sustaining of *actionable injury* is, under the statute, the only condition precedent to a suit on the policy. When actionable injury is alleged in a suit on the policy, the terms of the statute are complied with, and the petitioner upon proper proof of the injury is entitled to recover on the policy." (Emphasis in original.)).

Moreover, the facts giving rise to EDB's status as a motor carrier were clearly known to Canal at the time it issued EDB's insurance policy, as EDB identified itself in its Application for Commercial Motor Vehicle Insurance as a "common carrier" in the business of hauling soil via dump truck. Though the record is unclear as to why Canal failed to issue a motor carrier policy, it is beyond dispute that Canal, which is in the business of offering insurance to motor carriers, was on notice of EDB's status as such and thus of its need for insurance complying with the Motor Carrier Act. Furthermore, the undisputed evidence reflects that Mr. Blackmon relied on his insurance agent to procure the appropriate insurance coverage and was never informed that his policy lacked the endorsement necessary to provide motor carrier coverage. Under the facts of this case, where EDB sought insurance coverage from Canal; where Canal was on notice of EDB's status as a motor carrier and thus of its need to obtain motor carrier coverage; and where EDB was not informed of nor otherwise had reason to believe the policy it was issued fell short of the coverage it was required by law to maintain, Canal is subject to a direct action under the Motor Carrier Act by third parties injured by virtue of EDB's negligence. Former OCGA § 46-7-12.1 (c); former PSC Transp. Rule 7-2.1 (e).[8]

---

[8] This is true notwithstanding Canal's failure to file the certificate of insurance as required under the Act. See former OCGA § 46-7-12.1 (a) ("[t]he failure to file any form required by the state revenue commissioner shall not diminish the rights of any person to pursue an action directly against a motor common or motor contract carrier's insurer"). This provision in former OCGA § 46-7-12.1 (a) -- which mirrors language added in 2000, see Ga. L. 2000, p. 1583, § 1, to the closely related former OCGA § 46-7-12, on which OCGA § 46-7-12.1 was modeled, see Ga. L. 2005, p. 334, § 28-2.1 – is a clear expression of the Legislature's intent to prevent insurers from insulating themselves from liability under the Motor Carrier Act by failing to comply with its technical requirements. See *Devore v. Liberty Mut. Ins. Co.*, 257 Ga. App. 7 (570 SE2d 87) (2002) (noting that 2000 amendment to Motor Carrier Act changed prior law, under which direct action against insurer was precluded if required forms had not been filed); *Georgia Automobile Insurance Law*, supra, § 46:6 (a), (b) (same). The fact that the Legislature amended the Act for this purpose supports the conclusion that the insurer's duty to the public stems from the Act as triggered through the insurance policy rather than from the insurer's filings with the State. To the extent Georgia law has been construed otherwise, we reject that construction. See *Kolencik v. Stratford Ins. Co.*, 2005 WL 3238614 (N.D. Ga. 2005) (holding that insurer not liable to injured third party under policy that had been cancelled prior to accident due to noncompliance with Motor Carrier Act filing requirements by insured motor carrier and insurer).

Our approach herein is consistent with that we have taken in prior cases in which injured members of the motoring public have sought to recover from a negligent motor carrier's insurer despite some irregularity casting doubt on the existence or extent of coverage. See *Progressive Preferred Ins. Co. v. Ramirez*, 277 Ga. 392 (1) (588 SE2d 751) (2003) (insurer liable to injured third party despite fact that policy had lapsed prior to accident); *DeHart*, supra, 270 Ga. at 385 (2) (insurer liable to injured third party despite expiration of policy prior to accident); *Ross*, supra, 269 Ga. at 269 (insurer liable to injured third party despite fact that injuries were sustained in accident involving vehicle not listed in insured motor carrier's policy). In all these cases, the Court's rationale has hinged on the policy purpose of the Act to protect the motoring public. See, e.g., *DeHart*, supra at 385 (1) (citing purpose of the Act "to protect members of the general public against injuries caused by the negligence of a Georgia motor carrier"); *Ross*, supra at 267 ("the purpose of the insurance 'is not for the benefit of the insured (motor common carrier) but for the sole benefit of those who may have a cause of action for damages for the negligence of the motor common carrier' "). Accord *Farley v. Continental Ins. Co.*, 150 Ga. App. 389, 390 (258 SE2d 8) (1979) ("an injured plaintiff who seeks recovery of damages out of the [insurance] policy amount is a sort of third party beneficiary of the contract between the carrier and the insurer"). This being the case, any negative consequences arising from non-compliance with the Act by the insured motor carrier or its insurer should be suffered by one or both of the noncompliant parties rather than by the innocent motoring public. See *DeHart*, supra at 385-386 (2) (emphasizing, in finding insurer liable to injured third party despite expiration of insurance policy, that "this case does not involve litigation between the insurer and insured or between two insurance companies . . . [in which] courts generally have held that the insurance company that provided the expired policy is not liable").

2. Given our determination that the Motor Carrier Act applies in the circumstances presented here, it follows that any provisions in the insurance policy issued to EDB that would serve to reduce or negate Canal's obligations to the motoring public under the Act are void and of no effect. See *Vickers*, supra, 183 Ga. at 237 ("any provision in the policy of insurance, in so far as it may conflict with the plain provisions of the [motor carrier] statute, must give way, and is superseded by the statutory provisions"); *Guinn Transport, Inc. v. Canal Ins. Co.*, 234 Ga. App. 235 (507 SE2d 144) (1998) (invalidating exclusion in motor carrier policy inconsistent with minimum coverages required by Act and regulations). Compare *Curtis v. Girard Fire & Marine Ins. Co.*, 62 Ga. App. 28, 30-31 (7 SE2d 433) (1940) (noting

that Georgia appellate courts have permitted enforcement of policy "forfeiting provisions which were not included in any statute of this State but *which were not repugnant to its public policy*" (emphasis supplied)). The radius-of-use limitation, which purports to exclude from coverage any incident occurring more than 50 miles from Tifton, Georgia, is such a provision and is, therefore, unenforceable.[9] The radius-of-use limitation so invalidated, Canal is subject to liability up to the policy limit, which the record reflects is $500,000. See *Ramirez*, supra, 277 Ga. at 395 (1) (where insurer held liable to injured third party under expired policy, liability "is based on the policy itself as opposed to liability based on the minimum coverage imposed by law"). See also *Kelly v. Lloyd's of London*, 255 Ga. 291, 296 (336 SE2d 772) (1985) (holding, in construing analogous insurance provisions of different licensing statute to invalidate policy exclusion operating contrary to statute's purpose of protecting injured third parties, that insurer was liable up to policy limits rather than statutory minimum limits). Compare *Ross*, supra, 269 Ga. at 269 (statutory minimum limits rather than higher policy limits applied where policy on its face did not cover the particular vehicle involved).

3. The Court of Appeals also held that, given the absence of a transcript from the summary judgment hearing in the trial court, it was required to assume an adequate evidentiary basis for the trial court's ruling and thus was bound to affirm. *Sapp*, supra, 301 Ga. App. at 598. We disagree. As an initial matter, we note that our disagreement with the trial court and Court of Appeals lies not in any findings of fact but rather in our analysis of how the law applies to the facts. Thus, contrary to the Court of Appeals' conclusion, assuming that an adequate evidentiary basis exists for the trial court's findings does not automatically yield an affirmance of the result reached. Moreover, we disagree with the Court of Appeals' implicit assumption that a hearing transcript is always necessary to resolve appeals arising from a trial court's determination on summary judgment. Where, as here, all evidence was submitted to the trial court in advance of the hearing as required under OCGA § 9-11-56 (c), see *Porter Coatings v. Stein Steel & Supply Co.*, 247 Ga. 631 (278 SE2d 377) (1981), and the hearing consisted simply of oral argument based on evidence already submitted, a transcript of proceedings is not required to enable meaningful appellate review.

---

[9] Though Canal decries as unfair the fact that EDB received discounted insurance rates as a result of the inclusion of the radius-of-use limitation of which Canal cannot now take advantage, we note that Canal "may have a separate cause of action for indemnification against its insured motor carrier for breach of the insurance policy provisions." (Footnote omitted.) *Georgia Automobile Insurance Law*, supra, § 46:3.

*Baker v. Brannen/Goddard Co.*, 274 Ga. 745 (1) (559 SE2d 450) (2002).

4. To summarize the above, we now hold that, when an insurer purports to issue coverage to an insured which it knows is a motor carrier, the insurer assumes responsibility to indemnify the motoring public for injuries sustained by virtue of the carrier's negligence in at least the minimum amount statutorily required under the Motor Carrier Act and up to the policy limits, notwithstanding any provisions in the insurance policy to the contrary. Any other result under the circumstances presented here would have the effect of rewarding an insurer for its insured's noncompliance with the law and its own duplicity or negligence in failing to supply the appropriate type of coverage to its insured, all to the detriment of the motoring public and contrary to the purpose of the Act.

*Judgment reversed and case remanded with direction. All the Justices concur.*

## DECIDED FEBRUARY 28, 2011.

*Watkins, Lourie, Roll & Chance, Lance D. Lourie, Stephen R. Chance, William H. Hedrick*, for appellants.

*Gilliland, Ratz & Browning, Charles A. Ratz, Robert W. Browning, McCall, Williams, Wilmot & Powell, W. Earl McCall, Robert C. Wilmot, Spurlin & Spurlin, John C. Spurlin*, for appellee.